598 A.2d 336

**Dean M. CONRAD, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 22, 1991.

Decided Oct. 8, 1991.

Gary L. Snyer, for appellant.

David R. White, Asst. Counsel, for appellee.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Dean M. Conrad (licensee) seeks review of an order of the Court of Common Pleas of York County (trial court) dismissing his appeal from the Department of Transportation's (department) suspension of his driver's license under Section 1547 of the Vehicle Code (Code), 75 Pa.C.S. § 1547, on the ground that licensee refused to submit to a blood test. We reverse.

Officer Lewis Batty of the York Township Police Department arrested licensee for driving under the influence of alcohol on February 21, 1990. After giving licensee his *Miranda*[1] warnings at the scene of the arrest, Batty informed licensee that he was taking him to the York Hospi-

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tal to secure a blood alcohol test. Licensee indicated a willingness to submit to the procedure without hesitation.

Upon arriving at the hospital, Officer Batty gave both the *Miranda* and implied consent warnings to licensee. Licensee indicated that he understood and, despite a brief period of indecision, again agreed to submit to a blood test.[2]

Officer Batty proceeded to complete a portion of a four-part hospital form he had received from a hospital technician entitled "CONSENT TO BLOOD TEST FOR POLICE PURPOSES." He then presented the form to licensee, requesting that he sign it. After perusing the form, licensee again indicated that he would take the test, but stated that he would not sign the form.

When asked by Officer Batty whether he understood English, licensee indicated that he did. Officer Batty then informed licensee that if he did not sign the consent form as requested by the hospital technician, his failure to sign would be taken as a refusal to take the blood test. Licensee replied that he would not sign anything.

Officer Batty also stated that he tried to explain the consent form to licensee during a ten-minute period while the hospital technician was present. Licensee responded that he wanted to talk to his attorney. Officer Batty informed licensee that *Miranda* did not apply to the blood test and that after chemical testing was completed, licensee would have an opportunity to contact his attorney. Finally, Officer Batty asked licensee to sign the form indicating that he was either consenting or refusing to submit to the blood test. Licensee stated a third time that he would take a blood test, but that he would not sign anything.

Licensee testified before the trial court that because he does not read above a fifth grade level, he found the

2. Licensee had either fallen asleep or passed out on the way to the hospital. Officer Batty testified that when they arrived at the hospital, licensee appeared to be confused. Although licensee initially refused testing at that time, this isolated refusal was not perceived by Batty to be a refusal, who continued with the procedure.

consent form confusing.[3] He also testified that because he felt pressured, nervous and upset, and did not feel as though he had time to read the form, he just told Officer Batty that he would take the blood test but would not sign the form.

The trial court found licensee's actions constituted a refusal to submit to a blood test, stating that even if licensee did not understand the consent form due to his inability to read, Officer Batty's spoken explanation of the consequences of failing to sign the form were sufficient for licensee to understand the consequences of failing to sign. Therefore, the trial court dismissed licensee's appeal because licensee's refusal was a knowing refusal.

Licensee raises two issues on appeal.[4] The first is whether the trial court erred in finding that licensee, who repeatedly agreed to have blood taken, had refused chemical testing simply because he would not sign a hospital consent form. The second, which is raised in the alternative, is whether licensee's refusal was knowing and conscious.

The trial court appears to have based its decision solely on the issue of whether, considering his alleged inability to read the consent form, licensee made a knowing and conscious refusal. The court failed to address the preliminary

3. A review of the form (Commonwealth Exhibit No. 1), reveals that a signature and several dates which had been written into the second section had been crossed out. In addition, Officer Batty had failed to indicate on the form, despite the form's specific instructions, whether his request that the hospital draw licensee's blood was based on a lawful arrest, or the fact that licensee had been involved in a serious accident involving injuries or death.

4. In order to sustain a suspension under § 1547 of the Code, the Commonwealth must prove that a motorist was 1) arrested for driving under the influence of alcohol, 2) was requested to submit to chemical testing, 3) refused to submit to such testing, and 4) was specifically warned that a refusal would result in the revocation of his driver's license. *See Department of Transportation, Bureau of Driver Licensing v. Garlan,* 121 Pa.Commonwealth Ct. 400, 550 A.2d 873 (1988). The parties have stipulated and agreed that licensee was arrested for driving under the influence, that he was requested to submit to chemical testing, and that he was advised of the consequences of refusing chemical testing. Therefore, the only issues before us are those raised by licensee.

issue of whether licensee was required to sign the consent form as part of the test procedure. In so doing, the trial court erroneously equated licensee's refusal to sign the consent form with a refusal to take the test.

The question of law presented here is whether the Commonwealth, or a hospital acting for it, may interpose the execution of a consent form as a pre-test condition to a chemical test for which the motorist's assent is required.[5]

A review of § 1547 of the Code clearly indicates that any precondition to chemical testing is inappropriate. Section 1547 requires only that a motorist submit to a chemical test of his breath, blood or urine. Nothing in the Code requires a driver, as part of his consent to a blood test, to execute a document memorializing his consent. In addition, the Code specifically provides the hospital, physician and technician with the stated immunity from civil liability for "withdrawing blood and reporting of test results," 75 Pa.C.S. § 1547(j), and also provides that "[a]ny person who drives, operates or is in actual physical control of the movement of a motor vehicle ... shall be deemed to have given consent to one or more chemical tests of breath, blood or urine...." 75 Pa.C.S. § 1547(a).

Moreover, a one-year suspension provision applies when "any person placed under arrest for violation of § 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so...." 75 Pa.C.S. § 1547(b)(1). Thus, Section 1547 of the Code, by relieving hospitals of liability and imposing implied consent, has rendered hospital consent forms both redundant and unnecessary, with regard to chemical testing under the Code.

Notwithstanding the provisions of § 1547, police and/or hospitals often link various pre-test procedures not required

5. Our scope of review in license suspension cases is limited to determining whether the trial court's findings are supported by competent evidence, or errors of law have been committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Lello,* 132 Pa.Commonwealth Ct. 11, 571 A.2d 562 (1990).

by that section to a licensee's performance of a chemical test. The issue of whether a licensee's refusal to comply with such conditions constitutes a refusal of chemical testing was first addressed by this Court in *Maffei v. Department of Transportation*, 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980). In *Maffei*, we held that a motorist who had orally assented to chemical testing, but had refused to sign a hospital release form, had not refused testing under § 1547, stating as follows:

A motorist is thus deemed to consent to a blood test, not a blood test accompanied by a signed waiver of liability. License suspension is a sanction for refusal to submit to a chemical test, not refusal of a test linked with execution of a release.

*Maffei*, 53 Pa.Commonwealth Ct. at 185, 416 A.2d at 1169.

We next considered the appropriateness of pre-test procedures in *Sickman v. Commonwealth*, 79 Pa.Commonwealth Ct. 173, 468 A.2d 909 (1983). In that case, Sickman was informed by police that she was required to answer a questionnaire and to complete a performance test in addition to a breathalyzer test. Sickman was also informed that her failure to complete the entire procedure would result in a suspension of her license.[6] After Sickman refused to complete any part of the procedure, the department suspended her license for one year. The trial court sustained that suspension.

Upon appeal, this Court pointed out that § 1547 requires only that a licensee submit to chemical testing. Guided by our decision in *Maffei*, we concluded that even though Sickman had specifically refused testing, her actions did not constitute a refusal because she was never told that she could have satisfied the requirements of § 1547 and avoided the penalty of license suspension simply by submitting to the breathalyzer test alone. Therefore, we held that a licensee's refusal to complete a procedure other than the

6. A review of the testimony in *Sickman* indicated that police officers often used the term "breathalyzer test" to refer to the questionnaire, the performance test, and the actual breathalyzer test.

actual chemical test, is not a refusal of such a testing for the purposes of § 1547 of the Code. *Sickman.*

Although our holding in *Maffei* is limited to documents waiving liability, and our decision in *Sickman* is arguably limited to the proffer of a questionnaire and a performance test, the fundamental factor on which those cases turn is that the chemical test required by § 1547 was impermissibly linked to some conditional requirement or prerequisite not provided for in the Code.

The significance of linkage was further discussed in *Department of Transportation v. Varos*, 102 Pa.Commonwealth Ct. 379, 518 A.2d 343 (1986), *petition for allowance of appeal granted*, 515 Pa. 615, 530 A.2d 868 (1987).[7] The trial court in *Varos*, relying on § 1547 as discussed in *Maffei* and *Sickman*, held that the proffer of a hospital consent form in conjunction with the blood alcohol request was unnecessary and potentially confusing and reversed the one-year suspension imposed by the department.

This Court found that *Varos* was distinguishable from *Maffei* and *Sickman* because Varos' submission to the blood test was not conditioned upon his signing the consent form or completing a pre-test procedure. Varos was asked directly and unconditionally to submit to testing and he adamantly refused. Because the consent form presented was not a precondition to testing which impermissibly burdened Varos' ability to comply with § 1547, we reversed.

Thus, our early decisions in this area focused on the provisions of § 1547 and were based on whether the pre-test procedure was linked to testing. These "linkage" cases turned on whether or not the licensee was given a meaningful opportunity to comply with § 1547, and established what appeared to be a logical and consistent rationale for deciding similar cases in the future.

If the pre-test procedure were linked to testing, we held that the licensee did not refuse testing, because in linked

7. *See also Department of Transportation, Bureau of Traffic Safety v. Turner,* 100 Pa.Commonwealth Ct. 539, 515 A.2d 96 (1986).

cases it is often difficult, if not impossible, to determine whether a licensee's response relates to the procedure or the test.[8] If, on the other hand, the pre-test procedures were not linked to testing, and each had been presented as independent of the other, the licensee's response to a request for testing was determinative since a response regarding each can easily be treated separately.

Despite consistency and predictability of this approach to refusal cases involving pre-test procedures, our analysis shifted away from linkage, and consequently away from § 1547 concerns, in several of our post-*Varos* decisions. Although we never expressly overruled our "linkage" analysis, a new line of cases emerged which focus primarily on the type of pre-test procedure imposed and the licensee's willingness to be tested.[9]

Our decision in *Appeal of Kilcullen*, 103 Pa.Commonwealth Ct. 521, 520 A.2d 947 (1987), illustrates the confusion created by our new approach. In *Kilcullen*, a police officer repeatedly requested that Kilcullen take a blood test. Kilcullen refused to decide whether he would submit to testing, insisting that he be allowed to consult with his father before deciding. He also refused to sign a form presented to him.[10] Because anything substantially short of an unqualified assent to testing constitutes a refusal, the trial court found Kilcullen's indecision to be a refusal.[11]

We affirmed on appeal because Kilcullen, unlike the licensee in *Maffei*, never assented to testing. We went on to say that without such assent, the fact that the hospital required Kilcullen to sign the form was irrelevant. This

8. In addition, a licensee's refusal to complete pre-test procedures is often taken as a refusal of testing, and the licensee is never given the opportunity to perform the test.

9. These cases mistakenly ignore the significance of linkage, and are based on distinguishing facts present in *Maffei*, which did not form the basis for our decision there.

10. Our opinion in *Kilcullen* is unclear regarding the type of form presented to Kilcullen, because the form was alternately referred to as "a consent form" and a "waiver of liability form."

11. *See Miele v. Commonwealth*, 75 Pa.Commonwealth Ct. 130, 461 A.2d 359 (1983).

statement not only misrepresents *Maffei* by implying that that case turned on Maffei's assent, rather than on the fact that the form was impermissibly linked to testing, but also completely disregards our decision in *Sickman*.[12]

In *Wheatley v. Department of Transportation*, 104 Pa.Commonwealth Ct. 171, 521 A.2d 507 (1987), a case which closely parallels the case before us and which was decided just eighteen days after *Kilcullen*, a police officer linked the signing of a consent form with Wheatley's performance of the test. We held, based on *Maffei* and *Sickman*, that Wheatley's refusal to sign an "implied consent form" was not a refusal of chemical testing, because the form, which was presented as a precondition linked to testing, was not required by § 1547.

The facts presented in *Wheatley* do not indicate whether Wheatley was ever asked to consent to a breathalyzer test, or whether he ever refused such testing. However, it is clear that after Wheatley refused to sign the form, the police officer took him home without giving him an opportunity to perform the test. Therefore, our decision was based solely on the fact that the signing of the form was impermissibly linked to the test, and not on the content of the form or on Wheatley's assent.

We once again relied on *Maffei* and *Sickman*, and applied *Varos*-type analysis in *Department of Transportation, Bureau of Driver Licensing v. Bender*, 107 Pa.Commonwealth Ct. 475, 529 A.2d 44 (1987). In *Bender*, the trial court improperly sustained Bender's appeal from a license suspension based on *Sickman*. However, a review of the testimony in *Bender* revealed that the police officer had informed Bender in no uncertain terms that his license would be suspended if he refused testing, and had made it abundantly clear that Bender could avoid suspension simply by submitting to testing. Because the performance of a

12. It is unclear whether the form presented to Kilcullen was a precondition linked to testing. Had we distinguished *Kilcullen* from *Maffei* and *Sickman* on that basis, we could have affirmed based on *Varos*, thus avoiding the confusion created by our misinterpretation of *Maffei*.

chemical test had not been linked to a pre-test procedure, we reversed.

Just seven days later, this Court decided *Selan v. Department of Transportation, Bureau of Traffic Safety*, 108 Pa.Commonwealth Ct. 36, 529 A.2d 65 (1987). After Selan had been arrested, a police officer told Selan that the hospital required Selan's signature on a consent form in order to perform a blood test.[13] When Selan responded by closing his eyes and refusing to speak, his actions were taken as a refusal of the test and the department suspended his license. The trial court dismissed Selan's appeal. On appeal to this Court, Selan cited *Maffei*, claiming that he refused the test because the form he was asked to sign was a release of hospital liability.

However, despite our decision in *Wheatley* and our reliance on *Sickman* in *Bender*, we affirmed, holding that Selan's mistaken belief that the form contained a release of hospital liability did not justify his refusal of the test. We distinguished *Maffei* based on the type of form presented to Selan and ignored the fact that the form was impermissibly linked to testing.[14]

This Court then relied upon the rationale expressed in *Selan* in *Lewis v. Commonwealth*, 114 Pa.Commonwealth Ct. 326, 538 A.2d 655 (1988). Lewis remained silent after a police officer requested that he take a breathalyzer test. At some point, an admissions clerk had also asked Lewis for certain information and requested that he sign a consent form. The officer considered Lewis' silence a refusal of testing and the department suspended Lewis' license. The trial court dismissed Lewis' appeal.

On appeal to this Court, Lewis argued, based on *Maffei*, that because he was improperly required to submit to procedures in addition to the blood test, his license suspen-

13. The form did not contain a release of hospital liability, and was clear on its face.

14. However, we did not address the issues of whether Selan was required to sign the form, or whether his refusal to sign would have constituted a refusal to submit, had he orally agreed to testing.

sion was unjustified. We affirmed the trial court, holding that *Selan* was controlling because the form presented to Lewis was a consent form rather than a release of hospital liability.[15]

We again returned to the linkage analysis applied in *Varos* in *Pearson v. Commonwealth,* 122 Pa.Commonwealth Ct. 91, 551 A.2d 394 (1988). Pearson, who had demanded a blood test after being apprehended by police, refused to sign an implied consent form presented to him by a police officer while in the parking lot outside of the hospital. Pearson then became equivocal as to whether he would take a blood test. After Pearson had been escorted to the emergency room, a lab technician requested that Pearson sign a blood alcohol consent form which contained a release of liability provision.[16] Pearson refused to sign the form or to submit to testing, stating that he was afraid of needles, that he feared contracting Hepatitis or Acquired Immune Deficiency Syndrome, and that he wanted to take a breathalyzer. The officer recorded a refusal, and the department suspended Pearson's license. The trial court dismissed Pearson's appeal because § 1547 does not permit a licensee to select the type of chemical test to be administered.

On appeal to this Court, Pearson argued that his refusal of the blood test was not a refusal of testing for the purposes of § 1547 because he had been required to sign a hospital release form like the form presented in *Maffei*. In considering whether the release had been linked to the test, we discussed the significance of when Pearson refused testing relative to when he was asked to sign the release.[17]

---

**15.** It is unclear whether Lewis' signing of the form was linked to his performance of the test, whether Lewis refused to sign, or whether a refusal to sign would have constituted a refusal of the test, had Lewis consented to testing.

**16.** It appears that this form was different from the form presented by the police officer.

**17.** Because Pearson did not allege that the consent form offered by the police officer had been presented as an improper pre-test requirement, we did not address the effect of that form on Pearson's duty to

Because Pearson had become equivocal regarding the test prior to the presentation of the release form, his duty to assent to testing could not have been impermissibly burdened by the release.[18] Therefore, we affirmed the trial court's dismissal of Pearson's appeal.[19]

In *Department of Transportation, Bureau of Driver Licensing v. Balanow*, 126 Pa.Commonwealth Ct. 76, 558 A.2d 614 (1989), Balanow twice refused testing prior to being asked to sign a hospital release form. Balanow retracted those refusals after a police officer warned him of the consequences of refusing. Balanow was then asked to sign the release, and responded by saying, "I'm not signing no paper and I'm not taking no test." The trial court sustained Balanow's appeal from suspension based on *Maffei*.

Although the form presented in *Balanow*, like the form presented in *Maffei*, was a hospital release form, the form in *Balanow* was not linked to the test because Balanow's performance of test was not conditioned on his signing the release. Balanow's own statement indicates that he considered the two procedures to be separate and that he refused both. Therefore, we reversed.[20]

Thus, our decisions in this area can be characterized as those based on § 1547 which recognize linkage as the

assent to testing. Accordingly, any implication that we distinguished this case from *Maffei* based on the type of form presented, or that we considered the consent form offered by the police irrelevant to determining whether Pearson's duty to assent had been impermissibly burdened was not intended.

**18.** *See also Matthews v. Commonwealth,* 115 Pa.Commonwealth Ct. 403, 540 A.2d 349 (1988).

**19.** In order to avoid further unnecessary confusion in this area, we note that we inadvertently stated in *Pearson* that the licensee in *Maffei* had refused testing after being asked to sign a release. In addition, our reference to Pearson's failure to inform police or the lab technician that his refusal was based on the release is not intended to impose such a duty on similarly situated licensees.

**20.** Although we referred to *Kilcullen* in deciding *Balanow*, we also cited *Maffei* in recognizing the significance of linkage. Because the same result could have been reached in *Balanow* based solely on *Maffei*, we believe that the result in *Balanow* was proper.

critical factor in determining whether a licensee has refused testing,[21] and those which ignore the Code and instead consider the form of the procedure presented and/or whether the licensee assented to testing.[22] As is clear from the above review of our post-*Varos* decisions, such apparent inconsistencies in our reasoning have created confusion and have made it difficult to reconcile our case law in this area.[23]

To summarize, our early decisions in *Maffei, Sickman* and *Varos* provide a solid foundation for consistency and predictability in deciding refusal cases involving pre-test procedures. These three decisions, and some of our more recent ones, are properly based on the fact that § 1547 requires nothing more than that a licensee assent to testing. Where a pre-test procedure was linked to testing, we held that the licensee did not refuse testing, regardless of his or her actual response. Where testing was not linked to an extraneous procedure, our decisions turned on the licensee's assent to, or refusal of testing.

After *Varos* was decided in 1986, we occasionally gave less significance to linkage and focused instead on distinguishing *Maffei*, by considering either the type of pre-test procedure imposed or the licensee's willingness to be tested. Each of these approaches is flawed. The first is clearly inconsistent with Section 1547 which does not require a licensee to complete *any* pre-test procedure, regardless of its form.[24] The second ignores the practical problem of determining whether a licensee has refused the precondition or the test in situations where the precondition is so closely linked to the test itself that such a determination is often

21. *See Maffei, Sickman, Varos, Wheatley, Bender, Pearson* and *Balanow.*

22. *See Kilcullen, Selan* and *Lewis.*

23. For a chronological summary of our case law in this area, please see the addendum attached to this opinion.

24. Although it is true, as stated in *Selan* and *Lewis,* that our decision in *Maffei* only addressed the issue presented there regarding release forms, our extensive discussion of § 1547 in *Maffei* clearly indicates that linkage was a critical factor in our decision there.

impossible. This is especially true when, as here, a licensee who refuses the precondition is never given an opportunity to complete the chemical test requested.

■ We believe that the critical issue in refusal cases involving pre-test procedures is whether the procedure presented is impermissibly linked to testing. Because § 1547 literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, we hold that a suspension under § 1547 may not be supported by a licensee's refusal to satisfy any condition not explicitly required by § 1547.

■ In addition, we believe that when a licensee appealing a suspension questions the appropriateness of pre-test procedures, the department's burden of showing that a licensee refused chemical testing includes the burden of showing that the licensee was offered a meaningful opportunity to comply with § 1547. Therefore, where a precondition to chemical testing is linked with the performance of a chemical test, and the licensee is not informed that he or she can satisfy the requirements of § 1547, and avoid suspension by assenting to testing alone, we will resolve the question of whether a licensee has refused testing in favor of the licensee.[25]

As in *Maffei* and *Sickman*, the department's own evidence in this case establishes that the consent form presented to licensee was linked to the blood test as a necessary

---

**25.** In so holding, we are not unmindful that anything substantially less than an unequivocal assent to testing constitutes a refusal. However, we do not believe that this principle extends to situations where the police, or a hospital acting as an agent of the police, fail to give a licensee a meaningful opportunity to satisfy the requirements of § 1547 by impermissibly linking extraneous requirements to the test itself. Implicit in this position is our belief that when a licensee's duty to assent to chemical testing is impermissibly burdened by any pre-test procedure which is conditionally linked to such testing, a licensee is relieved of his or her duty to assent to testing. However, once a licensee has satisfied a pre-test condition, that condition no longer burdens that licensee's duty to comply with § 1547 and, therefore, cannot be a justification for refusing a chemical test.

prerequisite to testing, and that refusal of the first precluded the second. Therefore, the trial court erred, as a matter of law, in viewing the statutory mandate of § 1547 as being broad enough to cover the two-pronged requirement Officer Batty presented to licensee.

Accordingly, we reverse.[26]

## ORDER

NOW, this 8th day of October, 1991, the order of the Court of Common Pleas of York, No. 90–SU–01582–08, dated September 5, 1990, is reversed.

ADDENDUM

CHRONOLOGICAL SUMMARY OF REFUSAL CASES INVOLVING
PRE–TEST PROCEDURES DISCUSSED IN
Conrad v. Department of Transportation (1981 C.D.1990)

| CASE NAME | PRE–TEST PROCEDURE | RESPONSE | HOLDING |
|---|---|---|---|
| Maffei (7/22/80) | — waiver/release<br>— linked to test | 1) refused to sign<br>2) agreed to test | no refusal |
| Sickman (12/19/83) | — questionaire and performance test<br>— linked to test | 1) refused to complete<br><br>2) refused test | no refusal |
| Varos (12/5/86) | — consent form<br>— not linked to test | 1) refused to sign?<br>2) refused test | refusal |
| Kilcullen (2/5/87) | — consent form or release<br>— linked to test? | 1) refused to sign<br><br>2) no assent to test | refusal |
| Wheatley (2/23/87) | — consent form<br>— linked to test | 1) refused to sign<br>2) neither refused nor assented to test[1] | no refusal |
| Bender (7/20/87) | — unspecified<br>— not linked to test | 1) unspecified<br>2) refused test | refusal |
| Selan (7/27/87) | — consent form<br>— linked to test | 1) refused to sign<br>2) silence taken as refusal of test | refusal |
| Lewis (3/9/88) | — consent form<br>— linked to test? | 1) response unknown<br>2) silence taken as refusal of test | refusal |
| Pearson (12/14/88) | — waiver/release<br>— linked to test? | 1) refused to sign<br>2) refused test before waiver was presented | refusal |

**26.** We recognize that under the analysis applied herein, *Selan, Lewis,* and *Kilcullen* may have been decided differently. To the extent that those opinions are inconsistent with this analysis, their validity is questionable.

| CASE NAME | PRE–TEST PROCEDURE | RESPONSE | HOLDING |
|---|---|---|---|
| Balanow (5/17/89) | — waiver/release — not linked to test | 1) refused to sign 2) refused test | refusal |

[1] After Wheatley refused to sign, he was never given an opportunity to perform the test.