646 A.2d 729

**Betty A. RENWICK, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 1994.

Decided Aug. 10, 1994.

Richard E. Goldinger, for appellant.

William A. Kuhar, Jr., Asst. Counsel–Appellate Section, and Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before CRAIG, President Judge, NEWMAN, J., and DELLA PORTA, Senior Judge.

CRAIG, President Judge.

The licensee, Betty Renwick, appeals from a decision of the Court of Common Pleas of Butler County which dismissed her appeal from a one-year suspension of her operating privileges imposed by the Department of Transportation, Bureau of Driver Licensing, pursuant to section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1).

In a notice dated September 30, 1992, the department notified the licensee that her operating privileges would be suspended for one year pursuant to 75 Pa.C.S. § 1547(b)(1) as a result of her refusal to submit to chemical testing on September 3, 1992. The licensee appealed to the Court of Common Pleas of Butler County which conducted a de novo hearing on April 6, 1993.

At the hearing, the department presented the testimony of Officer Ray Kriebel. Officer Kriebel testified that, on September 2, 1992, at approximately 11:16 p.m., he investigated an accident involving a car which had struck the rear of a tractor trailer. The officer approached the driver of the car, the licensee, and noticed that she had bloodshot, watery eyes and a strong odor of alcohol on her breath. The licensee admitted that she had consumed a few drinks. The officer also observed that the licensee had a cut on her chin as a result of the collision. The licensee informed the officer that she had no other injuries. An ambulance crew arrived at the accident site, treated the licensee for her injuries, and transported her to a hospital.

Officer Thomas Palla also testified at the hearing. He stated that he went to the hospital and informed the licensee of the implied consent law.[1] He described his encounter with the licensee as follows:

1. Officer Palla and Officer Kriebel read the following implied consent form to the licensee, which provides in pertinent part:

1. Please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance, pursuant to Section 3731 of the Commonwealth of Pennsylvania Vehicle Code.
2. I am requesting that you submit to a chemical test of your blood....
3. It is my duty, as a police officer, to inform you that your operating privileges will be suspended for a period of one year, if you refuse to submit to this chemical test.
4. I must also inform you that your constitutional rights, when accused of a crime, do not apply to the chemical test. Consequently, you do not have a right to consult with an attorney, or anyone else present, while you take the chemical test. In addition, your constitutional right when accused of a crime, to remain silent, does not entitle you to refuse to submit to the test.... The constitutional right, ... to remain silent does not apply to the chemical test because

As I said, I had gone to the station and I had gotten the implied consent form and I took [it] to the hospital. And the head nurse showed me which room Miss Renwick was placed in and I went in and told her who I was and why I was there, that I had to read to her the implied consent form because we wanted to draw blood to determine her BAC. She looked at me. She said nothing and I went ahead and I read the form to her. And as she did with Officer Kriebel, she did the same to me. *When I got down to where I needed her to sign the form, she simply said nothing and just turned her head. I asked her twice, you know, if she would sign the form and there was no response from her.* (Emphasis added.)

Thereafter, Officer Kriebel arrived at the hospital. Officer Kriebel stated that he also read the implied consent form to the licensee and requested her to submit to a blood test to determine her alcohol content. Officer Kriebel stated that the licensee closed her eyes and turned her face away from the officer. Officer Kriebel asked the licensee if she understood what he had told her. The licensee did not respond. Thereafter, Officer Kriebel asked the licensee for her age, phone number, social security number and date of birth. The licensee answered each question without hesitation. Again, Officer Kriebel asked her if she would consent to the blood test. She did not respond.

Officer Kriebel informed the licensee that her silence would be considered a refusal to submit to the blood test, resulting in the suspension of her license for twelve months. *The licensee stated that she would submit to the blood test.* Thereafter, Officer Kriebel placed a clipboard with the implied consent form attached to it in front of the licensee and requested her to read the form and sign it. The licensee stated that she could not lift her arm to sign the form. The officer advised

it only entitles·you to avoid making incriminating verbal statements. A blood sample does not constitute a verbal statement.
5. Will you submit to the blood test?
I, _____, having had the above statement read to me and having received a copy of same, do hereby give permission for the above chemical tests and analyses to be administered to me.

the licensee that, if she did not sign the consent form, he would consider her action a refusal to submit to the blood test. The licensee did not sign the form and Officer Kriebel informed her that such action constituted a refusal to submit to the blood test.

Thereafter, Officer Kriebel observed the licensee sign a hospital treatment form presented by a nurse. The licensee took the pen with her right hand and, while holding a clipboard on which the treatment form had been placed, signed the form.

In an order dated April 6, 1993, the court dismissed the licensee's appeal from the department's September 30, 1992 suspension order, and this appeal followed.

The issue in this case is whether the licensee's refusal to sign the implied consent form after agreeing to take the blood test constitutes a refusal.

In *Wheatley v. Department of Transportation,* 104 Pa.Commonwealth Ct. 171, 175, 521 A.2d 507, 509 (1987), this court stated that "a refusal to sign an 'implied consent form' is not a refusal to submit to a breathalyzer test for purposes of Section 1547(b) of the Code." The court in that case cited *Sickman v. Commonwealth,* 79 Pa.Commonwealth Ct. 173, 175, 468 A.2d 909, 910 (1983), which held:

> Section 1547 of the Code requires only that a driver submit to a chemical test of his breath, blood, or urine. There is no additional requirement that the driver complete a questionnaire or a performance test, and the refusal to do so will not support a suspension under Section 1547(b) of the Code....

> Similarly, in this case we conclude that the refusal to submit to a procedure which contains requirements in addition to that of the actual breathalyzer test is not a refusal to take such a test for purposes of this section.

More recently, in *Conrad v. Department of Transportation,* 142 Pa.Commonwealth Ct. 642, 655, 598 A.2d 336, 343 (1991), this court stated:

We believe that the critical issue in refusal cases involving pre-test procedures is whether the procedure presented is impermissibly linked to testing. Because § 1547 literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, we hold that a suspension under § 1547 may not be supported by a licensee's refusal to satisfy any condition not explicitly required by § 1547.

 In this case, the fact that the licensee refused to sign the implied consent form because of injuries but later signed the hospital consent form is irrelevant.[2] As previously stated, 75 Pa.C.S. § 1547 does not require a licensee to sign an implied consent form in addition to consenting to the test. In this case, even though the licensee had orally agreed to submit to the blood test, the officers improperly linked the signing of the form with the matter of actual consent to the test.

Accordingly, the decision of the trial court is reversed.

### ORDER

NOW, August 10, 1994, the order of the Court of Common Pleas of Butler County, at Miscellaneous Docket No. 92–258, dated April 6, 1993, is reversed.

NEWMAN, Judge, dissenting.

I respectfully dissent from the majority's disposition of the instant case on two separate grounds. First, I dissent in order to bring attention to this confusing area of law in the hope that someday it will become clear.[1] Second, I believe

2. *Department of Transportation, Bureau of Driver Licensing v. Miller*, 155 Pa.Commonwealth Ct. 564, 625 A.2d 755 (1993), is distinguishable. In *Miller*, the licensee was willing to consent to a blood test, but conditioned his assent upon modification of the hospital consent form with respect to hospital liability and other matters. Specifically, the licensee demanded that the hospital affirmatively assume liability.

1. There is no doubt that alcohol is a significant factor in causing injuries and deaths on our highways. For example, in 1992, 628 people were killed and 14,225 people were injured in alcohol related crashes in Pennsylvania. 1992 Crash Facts and Statistics at 35 (Pennsylvania Department of Transportation),

that under the facts of the present case we should affirm the order of the trial court dismissing Licensee's statutory appeal because her refusal to undergo a blood test was not predicated on the officer's requirement that she sign the form containing the implied consent warnings, but was based on her refusal to complete the blood test generally.

I.

Because I believe that this area of law is muddled, I will begin with the seminal case in this area of law, *Maffei v. Department of Transportation,* 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980). In *Maffei,* this court set forth the principle that a licensee's refusal to sign a waiver of hospital liability, as a condition of submitting to a blood test, was not a refusal under the Implied Consent Law, Section 1547 of the Vehicle Code (Code), *as amended,* 75 Pa.C.S. § 1547. The holding in *Maffei* was subsequently followed in similar cases by our court. *E.g. Sickman v. Commonwealth,* 79 Pa.Commonwealth Ct. 173, 468 A.2d 909 (1983).

This court, however, subsequently refined *Maffei* and its progeny in *Selan v. Department of Transportation, Bureau of Traffic Safety,* 108 Pa.Commonwealth Ct. 36, 529 A.2d 65 (1987) and *Lewis v. Commonwealth,* 114 Pa.Commonwealth Ct. 326, 538 A.2d 655 (1988). In both of these cases, we held that a hospital consent form does not constitute a waiver of hospital liability and is, therefore, not the type of impermissible additional requirement which justifies a refusal to submit to a blood test. Thus, in *Selan/Lewis,* we drew a distinction on the basis of the type of the form that the licensee was required to sign.

The *Selan/Lewis* cases were subsequently followed by our decision in *Conrad v. Department of Transportation,* 142 Pa.Commonwealth Ct. 642, 598 A.2d 336 (1991). In that case, this court considered these divergent line of cases and decided that the "critical issue in refusal cases involving pre-test procedures is whether the procedure presented is impermissi-

bly linked to testing." *Id.* at 655, 598 A.2d at 343. The court set forth the statement that follows:

[b]ecause § 1547 literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, we hold that a suspension under § 1547 may not be supported by a licensee's refusal to satisfy *any condition* not explicitly required by § 1547.

*Id.* (Emphasis added).

Thus, in *Conrad,*[2] we explicitly disapproved of the analysis employed by our court in the *Selan/Lewis* line of cases. However, we recently retreated from our holding in *Conrad* and returned to a *Selan/Lewis* analysis in *Department of Transportation, Bureau of Driver Licensing v. Miller,* 155 Pa.Commonwealth Ct. 564, 625 A.2d 755 (1993).

In *Miller,* we stated:

[w]hile this is admittedly a close case which falls somewhere between *Maffei* and *Selan/Lewis,* we conclude that *Selan/Lewis* are the controlling cases. After his initial refusal to sign the form, and after the admissions clerk crossed out the liability release provision, Licensee was confronted, in effect, with a consent form. Licensee refused to sign the revised form and demanded that the hospital assume liability for his care and that the director of the hospital initial the form. At this point, Officer Atkin warned Licensee of the consequences of refusing to submit to the blood test. Licensee again refused to sign the form or take the test. Given these intervening circumstances, we cannot say that the trial court erred in concluding that *Maffei* was inapplicable.

*Id.* at 569, 625 A.2d at 757.

After we review these cases, it is clear that we have almost come full circle. As the law presently stands, we have ignored *Conrad*'s broad holding and its corresponding bright line rule, and have returned to examining the specific form that the

---

2. *Conrad* was a panel decision of this court and therefore did not and could not overrule the *Selan/Lewis* line of cases.

licensee was asked to sign. If the form is a liability waiver form, a refusal cannot be predicated on a licensee's refusal to sign the form. However, if the form is a hospital consent form, a refusal can be predicated on the licensee's failure to sign the form. This brings us to the present case where Licensee was asked to sign a form containing the implied consent warnings which is obviously neither a hospital liability release form nor a consent form.

The majority concludes on the basis of *Wheatley v. Department of Transportation*, 104 Pa.Commonwealth Ct. 171, 521 A.2d 507 (1987), that Licensee's suspension should be reversed because the Code does not mandate "a licensee to sign an implied consent form in addition to consenting to the test." Majority opinion at 6. *Wheatley* was decided before the *Selan/Lewis* line of cases and involved a licensee who refused to sign a form containing the implied consent warnings. The trial court dismissed his appeal, and this court reversed, concluding that a refusal to sign an "implied consent form" is not a refusal to submit to a breathalyzer test for purposes of Section 1547 of the Code. While I clearly understand the majority's reliance on this case, I write separately to urge reconsideration of *Wheatley*'s holding as well as for a general clarification and refinement of this area of law.

I believe that a form containing implied consent warnings is more analogous to a consent form than to a hospital liability waiver form. By signing an "implied consent form," a licensee is not affirmatively relinquishing any rights that the individual has. Instead, that individual is solely acknowledging that he or she has been read the warnings by the officer. As it appears from our holding in *Miller*, if this court is to adhere to the *Selan/Lewis* analysis, I urge it to adopt the proposition that asking a licensee to sign a form containing implied consent warnings is more similar to a consent form than it is to a waiver of liability form.

## II.

With respect to the specifics of the instant case, it should be noted that the issue of whether the conduct of a licensee

constitutes a refusal is a question of law. *Miller.* As the majority correctly acknowledges, Licensee refused on at least three separate occasions to undergo a chemical test of her blood.[3] After Licensee finally expressed a willingness to take the test, the officer again explained the implied consent law to her, and asked her to sign the "implied consent form." Licensee stated that she was unable to sign the form, even though within minutes, she was able to sign another unrelated form at the request of the hospital staff.

Licensee's obstinate behavior is evident throughout the entire record. Moreover, and more important, a reading of the record does not reveal that Licensee refused to undergo the chemical test because of the officer's request that she sign the form. Instead, it is evident that Licensee never wished to undergo the test in the first place. For example, Officer Kriebel testified as follows about Licensee's final refusal:

> A. And I then went and I also read the implied consent to the Defendant and I requested that blood be drawn from her to determine her alcohol content. And during this point, she looked away from me and she closed her eyes and I asked her if she understood what I had said and she failed to reply to me, to make any type of a reply. I then asked her several questions. The first one, I asked her what her age was. The second question, I asked her what her phone number was. And the third question, I asked her what her social security number was. And this is while she had turned and closed her eyes. And I asked her a fourth question and if she knew her date of birth. She opened her eyes and looked toward me and she answered each question correctly and without hesitation. I again asked her if she would consent to the blood test

---

**3.** It is well-established that a refusal need not be expressed in words but can be implied from a licensee's conduct. *Department of Transportation, Bureau of Traffic Safety v. Krishak,* 91 Pa.Commonwealth Ct. 307, 496 A.2d 1356 (1985). Moreover, silence to a request to submit to a chemical test constitutes a refusal under the law. *Department of Transportation, Bureau of Driving Licensing v. Wicks,* 136 Pa.Commonwealth Ct. 322, 583 A.2d 21 (1990).

and again she closed her eyes and she looked away from me.

A. Did you advise her that her conduct would constitute a refusal?

Q. Yes, sir, I did. I advised her at that point that I believed she knew what was going on. And I told her that it would be considered a refusal and that her license would be suspended for twelve months.

Hearing of April 6, 1993 at 9–10.

The record is bereft of any testimony that would suggest that Licensee connected her refusal to sign the form containing the implied consent warnings with her refusal to undergo the chemical test. Instead, it is clear from the record that Licensee did not desire to undergo the blood test at all. This purported action has been explicitly rejected by our court in a similar case.

In *Pearson v. Commonwealth,* 122 Pa.Commonwealth Ct. 91, 551 A.2d 394 (1988), we distinguished *Maffei* on the basis that in *Pearson* the licensee was equivocal as to whether he would submit to the blood test prior to the presentation of the liability waiver form and he refused to undergo the blood test because he feared needles, and not based on the signing of the form. Likewise, in the instant case, a reading of the record clearly indicates that Licensee's refusal was not predicated on the requirement that she sign the "implied consent form," but on her unwillingness to undergo the test in the first place.[4] This court should not sanction such a result. Otherwise, we are left with an absurd situation where a visibly intoxicated licensee can remain silent when repeatedly asked to undergo a blood alcohol test, and escape the penalties that should follow, because in the midst of her continued silence she expressed a fleeting willingness to undergo the test.

4. *See also Department of Transportation, Bureau of Driver Licensing v. Balanow,* 126 Pa.Commonwealth Ct. 76, 558 A.2d 614 (1989) (where our court held that a refusal to sign a hospital liability consent form by licensee would be considered a refusal under the Implied Consent Law when a licensee's refusal relates to the chemical blood test and not to the existence of the waiver form.)

For these reasons, I respectfully dissent from the majority opinion and would affirm the order of the trial court dismissing Licensee's statutory appeal of the suspension of her operating privileges.