**Frank B. SMITH, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued Sept. 21, 1994.
Decided Feb. 23, 1995.

David E. Hershey, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

SMITH, Judge.

Frank B. Smith appeals from the August 3, 1993 order of the Court of Common Pleas of Cumberland County which upheld the Department of Transportation's (DOT) suspension of his operating privileges for failure to submit to chemical testing pursuant to Section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1). Section 1547(b)(1) provides that "[i]f any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon no-

tice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months."

■ The issues raised on appeal are whether the trial court erred in concluding that Smith's refusal to sign a hospital consent form for withdrawal of a blood sample, after orally consenting, constituted a refusal of chemical testing as a matter of law; and whether Smith's conduct represents a refusal of testing when the officer failed to advise Smith as to how he could satisfy the implied consent provisions of the Vehicle Code. Smith argues that the trial court erred in sustaining the suspension of his license because Section 1547 does not require a licensee to sign a consent form and therefore his refusal to sign the form was not a refusal to submit to chemical testing.[1]

At the de novo hearing before the trial court, Trooper Warren Wiglesworth testified that on March 6, 1993, he arrested Smith for driving under the influence of alcohol, gave Smith warnings mandated under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the implied consent warnings, and that Smith initially agreed to take a blood test and was transported to Polyclinic Hospital. Wiglesworth further testified that the hospital admitting clerk requested Smith to sign a form authorizing the hospital to perform the blood test, Smith refused to sign the form, and the officer again warned Smith that refusal to submit to the procedure would result in a twelve-month license suspension. Smith responded that he would agree to take the test, but would not sign the form. Wiglesworth indicated to Smith that refusal to sign the consent form would be considered a refusal to take the test, Smith again refused to sign the form, and the test was not performed.

The trial court found that the form in question was a consent form which Smith refused to sign, observed that since Smith did not testify his reasons for refusing to sign the form are unknown, and because the

court was not presented with a liability release form the court determined that DOT met its burden of proof. The trial court adopted the reasoning in *Department of Transportation, Bureau of Driver Licensing v. Miller*, 155 Pa.Commonwealth Ct. 564, 625 A.2d 755 (1993), where this Court held that a request to the licensee to sign a consent form does not represent an impermissible precondition to testing which would excuse or otherwise exonerate a licensee from his or her refusal to submit to a blood test.

This court first determined that a licensee's refusal to sign a hospital consent form constituted a refusal to consent to chemical testing under Section 1547 in *Selan v. Department of Transportation, Bureau of Traffic Safety*, 108 Pa.Commonwealth Ct. 36, 529 A.2d 65 (1987). In *Selan*, a hospital technician advised the licensee that the hospital required his signature on a consent form in order to perform the test and the licensee refused to sign. This Court sustained the license suspension based on the trial court's finding that the form the licensee refused to sign was merely a consent form, as opposed to a waiver of liability form, and therefore the licensee's refusal to sign the form constituted a refusal to consent to chemical testing. Because a consent form is not the kind of impermissible additional requirement which excuses a licensee's refusal to sign, the suspension imposed upon the licensee was reinstated.

■ Following the well-reasoned *Selan* decision, this Court in *Lewis v. Commonwealth*, 114 Pa.Commonwealth Ct. 326, 538 A.2d 655 (1988), held that *Selan* controlled the outcome of the case and that where the hospital admissions clerk requested the licensee to sign a consent form, his refusal to do so was unjustified because the form did not represent an impermissible additional requirement to taking the test. Compare however *Maffei v. Department of Transportation*, 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980), where this Court distinguished

---

1. This Court's scope of review in a driver's license suspension case is limited to determining whether the findings of fact of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

between a consent form and a release of liability form and decided that because a license suspension is a sanction for the refusal of chemical testing and not for the refusal of testing linked to the signing of a release, a waiver of liability form represents an impermissible additional requirement to Section 1547 which may not be sanctioned by the Court. Consequently, a refusal to sign a release of liability form does not constitute a refusal to submit to chemical testing and a license suspension may not be imposed on this basis.

In *Miller*, the licensee was requested to sign a consent form that also contained provisions for waiver of liability. The licensee objected to the liability provisions which the hospital admissions clerk crossed off the form. The licensee then stated that he would sign the form only if the hospital agreed to accept liability should he contract AIDS or hepatitis and if the director of the hospital initialled the form. The licensee's demands were not met and the blood test was not completed. This Court affirmed the trial court's conclusion that the licensee's refusal to sign the form constituted a refusal to submit to the test. Citing *Selan* and *Lewis* as controlling, this Court stated that once the admissions clerk eliminated the liability provisions, the licensee was faced solely with a consent form which is not the type of improper additional requirement linked to testing found objectionable in *Maffei*.

On the other hand, Smith argues that *Conrad v. Department of Transportation,* 142 Pa.Commonwealth Ct. 642, 598 A.2d 336 (1991), controls the outcome of his case.[2] In *Conrad,* the licensee orally agreed to take

the test but refused to sign a consent form for the procedure. After a lengthy analysis and discussion of divergent decisions in this area of the law and of the "linkage test," the Court reversed DOT's suspension of Conrad's license stating in relevant part:[3]

Thus, our decisions in this area can be characterized as those based on § 1547 which recognize linkage as the critical factor in determining whether a licensee has refused testing, and those which ignore the Code and instead consider the form of the procedure presented and/or whether the licensee assented to testing. As is clear from the above review of our post-*Varos* decisions, such apparent inconsistencies in our reasoning have created confusion and have made it difficult to reconcile our case law in this area.

To summarize, our early decisions in *Maffei, Sickman* and *Varos,*[4] provide a solid foundation for consistency and predictability in deciding refusal cases involving pre-test procedures. These three decisions, and some of our more recent ones, are properly based on the fact that § 1547 requires nothing more than that a licensee assent to testing. Where à pre-test procedure was linked to testing, we held that the licensee did not refuse testing, regardless of his or her actual response. Where testing was not linked to an extraneous procedure, our decisions turned on the licensee's assent to, or refusal of testing. (Footnotes omitted from original.)

*Id.* at 653–654, 598 A.2d at 342–343.

Section 1547 explicitly requires that a licensee consent to chemical testing; it does not specifically distinguish between an oral

---

**2.** Smith also relies on language in this Court's decision in *McNulty v. Department of Transportation, Bureau of Driver Licensing,* 157 Pa.Commonwealth Ct. 260, 629 A.2d 278 (1993), to support his argument. The facts in *McNulty* are distinguishable because the trial court found that the licensee's refusal to consent to chemical testing was based on his insistence that he read the implied consent provisions set forth in Section 3731 of the Vehicle Code before consenting to the test. The court's decision was not based upon the licensee's refusal to sign the consent form.

**3.** Another recent decision by this Court, *Renwick v. Department of Transportation, Bureau of Driver*

*Licensing,* 166 Pa.Commonwealth Ct. 543, 646 A.2d 729 (1994), followed the *Conrad* linkage test analysis and reversed a license suspension where the licensee refused to sign the implied consent form presented to her by the arresting officer.

**4.** *See Maffei v. Department of Transportation,* 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980); *Sickman v. Commonwealth,* 79 Pa.Commonwealth Ct. 173, 468 A.2d 909 (1983); and *Department of Transportation, Department of Driver Licensing v. Varos,* 102 Pa.Commonwealth Ct. 379, 518 A.2d 343 (1986), *appeal discontinued* (No. 62 W.D. 1987, September 16, 1987).

or written consent or state any preference for one form of consent over the other. Parenthetically, DOT notes in its brief and at oral argument that the consent form is required by the hospital and not DOT and merely acknowledges the driver's consent to the withdrawal of blood. Nonetheless, the rule is well established that "anything substantially less than an unqualified, unequivocal assent constitutes a refusal under § 1547." *Department of Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa.Commonwealth Ct. 108, 111, 468 A.2d 891, 892 (1983).

 To this end, the Court holds that *Miller* properly reaffirmed the principles enunciated in *Selan* and *Lewis* and, by this decision, firmly upholds the ruling that a request for a licensee to sign a hospital consent form is not the kind of improper or impermissible precondition to chemical testing which excuses the licensee's refusal to submit to a blood test. Because of the apparent conflict between *Conrad* and the clear pronouncements in *Miller, Lewis* and *Selan,* the Court therefore overrules *Conrad* which totally excludes as a permissible precondition to testing the presentation of a consent form to a licensee for signature. The holding in *Renwick,* which relies upon the *Conrad* linkage analysis, is overruled as well.

 Another consideration in arriving at today's decision is the objective to be served by the implied consent law. The law is designed to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the highways, *Kostyk v. Department of Transportation,* 131 Pa.Commonwealth Ct. 455, 570 A.2d 644 (1990); and to hold that a motorist can avoid license suspension simply by refusing to authorize in writing what the licensee has already orally consented to would frustrate the overall purpose of the law to protect the public from impaired motorists.

 In order to sustain a license suspension pursuant to Section 1547(b), DOT must prove that the driver (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. Walsh,* 146 Pa.Commonwealth Ct. 461, 606 A.2d 583 (1992). Whether conduct found by the trial court constitutes a refusal is a question of law. *Department of Transportation, Bureau of Driver Licensing v. Kilrain,* 140 Pa.Commonwealth Ct. 484, 593 A.2d 932, *appeal denied,* 529 Pa. 625, 600 A.2d 541 (1991). Because the consent form presented to Licensee in the case sub judice imposed no impermissible precondition to chemical testing, his refusal to sign the form constituted a refusal of testing as a matter of law. Thus the trial court did not err in applying *Miller* because this Court has reaffirmed its holding and the earlier rulings in *Selan* and *Lewis.*[5]

### ORDER

AND NOW, this 23rd day of February, 1995, the order of the Court of Common Pleas of Cumberland County is affirmed.

FRIEDMAN, Judge, dissenting.

I must respectfully dissent.

The issue before us is whether a licensee's refusal to sign a hospital consent form constitutes that licensee's refusal to submit to chemical testing.[1] Although we considered

---

**5.** Smith's remaining argument has no merit as the Court has repeatedly ruled, and again holds here, that a consent form is not an improper additional requirement to Section 1547. *Miller; Lewis; Selan.* As a corollary, Smith was not entitled to advice as to how he could satisfy the requirements of the implied consent law in view of his refusal to sign the consent form.

**1.** To sustain a license suspension under 75 Pa. C.S. § 1547(b), Department of Transportation, Bureau of Driver Licensing (DOT) must establish that the licensee:

(1) was arrested for driving while under the influence of alcohol,
(2) was requested to submit to a chemical test,
(3) refused to submit to such a test, and
(4) was specifically warned that a refusal would result in the revocation of his driver's license.

*Department of Transportation, Bureau of Driver Licensing v. Jennings,* 156 Pa.Commonwealth Ct. 219, 627 A.2d 211 (1993). Here, I focus my review on whether Smith refused to submit to a chemical test.

this issue at great length in *Conrad v. Department of Transportation, Bureau of Licensing,* 142 Pa.Commonwealth Ct. 642, 598 A.2d 336 (1991), this court has now, inexplicably, strayed from the precise approach set forth in that precedential decision.

In *Conrad,* we examined the existing body of case law on this subject and finally clarified what had become a confused area of law. Carefully, we explained the analysis to be used in cases where we had to decide whether a licensee refused to submit to chemical testing within the meaning of the Implied Consent Law, 75 Pa.C.S. § 1547(a) and (b),[2] or merely refused to comply with a pre-test procedure not explicitly required by that law. The key to this determination was whether an impermissible linkage existed between the procedure and the test, so that the former became a precondition to the latter. As we stated in *Conrad:*

> We believe that the critical issue in refusal cases involving pre-test procedures is whether the procedure presented is impermissibly linked to testing. Because § 1547 literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, we hold that a suspension under § 1547 may not be supported by a licensee's refusal to satisfy any condition not explicitly required by § 1547.

> In addition, we believe that when a licensee appealing a suspension questions the appropriateness of pre-test procedures, the department's burden of showing that a licensee refused chemical testing includes the burden of showing that the licensee was offered a meaningful opportunity to comply with § 1547. Therefore, where a

> precondition to chemical testing is linked with the performance of a chemical test, and the licensee is not informed that he or she can satisfy the requirements of § 1547, and avoid suspension by assenting to testing alone, we will resolve the question of whether a licensee has refused testing in favor of the licensee.

*Id.* at 655, 598 A.2d at 343.

The *Conrad* analysis followed the line of case law which, beginning with *Maffei v. Department of Transportation,* 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980), recognized that linkage between the test and any pre-test procedure was the critical factor in determining whether a licensee refused testing under § 1547. However, we also noted a second line of cases, including *Lewis v. Commonwealth,* 114 Pa.Commonwealth Ct. 326, 538 A.2d 655 (1988), *Selan v. Department of Transportation, Bureau of Traffic Safety,* 108 Pa.Commonwealth Ct. 36, 529 A.2d 65 (1987), and *Appeal of Kilcullen,* 103 Pa.Commonwealth Ct. 521, 520 A.2d 947 (1987), which ignored the significance of linkage and focused primarily on the type of pre-test procedure imposed or the licensee's willingness to be tested. Critical of these approaches and aware that under the analysis espoused in *Conrad,* these non-linkage cases may have been decided differently, we specifically questioned the continued validity of *Lewis, Selan,* and *Kilcullen. Conrad,* 142 Pa.Commonwealth Ct. at 656 n. 26, 598 A.2d at 343 n. 26.

Despite this clear and well-reasoned *Conrad* opinion which was intended to finally reconcile our case law in this area, we foiled *Conrad's* objectives in *Department of Trans-*

---

2. The "Implied Consent Law," which is found at 75 Pa.C.S. § 1547(a) and (b), provides in relevant part:

 **(a) General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
 (1) while under the influence of alcohol....

 **(b) Suspension for refusal.**—
 (1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
 (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

*portation v. Miller,* 155 Pa.Commonwealth Ct. 564, 625 A.2d 755 (1993), when, inexcusably, we ignored *Conrad* and based our determination on *Lewis* and *Selan,* the very cases that *Conrad* questioned.[3]

The re-emerging unrest caused by *Miller's* failure to follow, or even consider, *Conrad* is apparent in the majority's opinion here. The majority relies on *Miller* and the *Selan/Lewis* line of cases. I believe that the *Conrad* analysis should be reaffirmed and thus dispel any confusion that plagues this area of the law.

Having expressed my preference for the *Conrad* approach to this issue, I now address the concerns I have with the majority's opinion. Unlike *Miller,* which failed even to mention *Conrad,* the majority discusses the *Conrad* opinion but refuses to follow it for five specific reasons. Although these reasons, offered on pages 6 and 7 of the majority opinion, may sound appealing, in the end they remain unconvincing.

First, the majority claims that § 1547 does not state any preference for written or oral consent. This is true and, in fact, actually supports *Conrad's* rationale that a licensee should have to do no more than that which § 1547 explicitly requires. Because written consent is not a legal requirement, a licensee should be permitted to submit to chemical testing even when he only agrees to such testing orally.

Second, the majority notes that the consent form is required by the hospital and not DOT. This is not a valid argument because the hospital acts for DOT when it interposes a consent form as a pre-test condition. *See Conrad,* 142 Pa.Commonwealth Ct. at 646, 598 A.2d at 338. Moreover, if a licensee agrees orally, the hospital can administer the test without a signed consent form. By relieving hospitals of liability, 75 Pa.C.S. § 1547(j), and imposing implied consent, 75 Pa.C.S. § 1547(a), the law renders such forms redundant and unnecessary, both to the hospital and under § 1547.

Third, the majority points out that the form merely acknowledges the licensee's consent to the withdrawal of blood and, thus, presents no burden to his duty to submit to testing. Again, this is true, which is why, as discussed in *Conrad,* the linkage between the form and the test is impermissible. After consenting orally, a licensee should be given the opportunity to submit to chemical testing without having to memorialize his consent to that test in writing as a precondition.

Fourth, the majority, at page 236, notes that "anything substantially less than an unqualified, unequivocal assent constitutes a refusal under § 1547." However, this principle does not extend to situations where, because of impermissible linkage between the test and extraneous requirements, a licensee has not been given a meaningful opportunity to satisfy § 1547 requirements. *See Conrad,* 142 Pa.Commonwealth Ct. at 655 n. 25, 598 A.2d at 343 n. 25.

Fifth, the majority reiterates the objective to be served by the Implied Consent Law and contends that the purpose of the law would be frustrated if a licensee could avoid a suspension simply by refusing to authorize in writing what he has agreed to orally. Again, utilization of the linkage approach makes this argument invalid because a licensee would not be able to avoid suspension in this manner unless the form and test were improperly linked. In fact, allowing licensees to submit to testing after merely giving their oral consent serves the purpose of the law; it is by preventing a licensee who is agreeable to testing from satisfying § 1547 requirements that we frustrate the Implied Consent Law. The point is, license suspension is not proper unless the licensee refuses to submit *to the test.* If the licensee is willing to submit to the actual testing, he should not face suspension of his license merely because he will not sign an unnecessary piece of paper beforehand.

Therefore, where a precondition to chemical testing is impermissibly linked with the

---

**3.** I do not mean to say that *Miller* was wrongly decided, but only question the approach used to reach the result. *Miller* was concerned with a licensee's effort to impose liability upon the hospital in the event that he should contract disease, in contravention of 75 Pa.C.S. § 1547(j). Because *Conrad's* rationale depends in part upon a hospital's guaranteed immunity, I believe that the result in *Miller* would have been identical under a *Conrad* analysis.

performance of a chemical test, and the licensee is not informed that he can satisfy the requirements of § 1547 and avoid suspension by assenting to testing alone, I would resolve the question of whether a licensee has refused testing in favor of the licensee. *Conrad*, 142 Pa.Commonwealth Ct. at 655, 598 A.2d at 343.

Based on my review of the record here, Smith initially agreed to take the test (R.R. at 15a–16a), and he never refused to submit to a blood test, but only refused to sign the hospital consent form. (R.R. at 15a–17a.) I believe that this constitutes competent evidence to support a finding that Smith did not refuse to take the blood test. The police officer here acted improperly and should have informed Smith that the completion of the consent form was unnecessary for administering the blood test. Because the police officer himself promoted the belief that the two were linked and did not proceed further to administer the blood test, competent evidence of record exists to prove that Smith did not make a conscious and knowing refusal to submit to a chemical test. Accordingly, the trial court erred by holding otherwise.

PELLEGRINI and KELLEY, JJ., join in this dissent.