669 A.2d 934

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**Betty A. RENWICK, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1995.

Decided Jan. 18, 1996.

Timothy P. Wile, Harold H. Cramer, Philadelphia, for Penn-dot.

Richard E. Goldinger, Butler, for Betty Renwick.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

ZAPPALA, Justice.

This appeal raises the issue of whether a licensee's refusal to sign a consent form after she orally agreed to submit to a blood test constitutes a refusal pursuant to 75 Pa.C.S. § 1547. We hold that the failure to sign a consent form does not per se constitute a refusal to submit to chemical testing. However, in the instant case, the record establishes that the licensee demonstrated a general unwillingness to submit to testing that was not based solely upon her refusal to sign the consent form. Under these circumstances, the licensee's conduct constituted a refusal.

The record discloses that on September 2, 1992, at approximately 11:16 p.m., Officer Ray Kriebel investigated an accident whereby a vehicle driven by Appellee, Betty Renwick, struck the rear of a tractor-trailer. Officer Kriebel approached Appellee's vehicle and noticed that she had a facial cut to the chin and bloodshot, watery eyes. When Appellee informed the officer that she had no other injuries, the officer detected a strong odor of alcohol on her breath. Appellee admitted that she had consumed a few drinks. An ambulance crew arrived at the accident site, treated Appellee for her injuries, and transported her to a hospital.

Officer Thomas Palla arrived at the hospital, identified himself to Appellee, and stated that he had to read the consent form to her because the police wanted to draw blood to determine her blood alcohol content. Officer Palla read her the form [1] and asked Appellee to sign it on two different

1. The consent form advised the licensee that she was under arrest for driving under the influence of alcohol; requested that she submit to a chemical blood test; advised that her operating privileges will be suspended for one year upon refusal of the test; informed her that constitutional rights pertaining to criminal acts are not applicable to the chemical test; and had a space for the licensee's signature.

occasions. Appellee ignored Officer Palla and turned her head.

Officer Kriebel then arrived at the hospital and also read the consent form to Appellee. When he requested that she submit to the blood test, Appellee closed her eyes and turned her face away. Appellee did not respond when Officer Kriebel asked if she understood him. Finally, he asked Appellee to tell him her age, phone number, social security number and date of birth. Appellee answered each question without hesitation. When Officer Kriebel again asked her if she would consent to the blood test, she did not respond.

Officer Kriebel informed Appellee that her silence would be considered a refusal to submit to the blood test, resulting in the suspension of her license for twelve months. Appellee then stated that she *would* submit to the test. Thereafter, Officer Kriebel handed Appellee a clipboard with the consent form attached and requested that she read the form and sign it. Appellee stated that she could not lift her arm to sign the form. Officer Kriebel then informed her that if she did not sign the consent form, he would consider her action a refusal to submit to the blood test. Appellee did not sign the form and Officer Kriebel informed her that her action was a refusal. Shortly thereafter, Officer Kriebel observed Appellee sign a hospital treatment form presented by a nurse.

On September 30, 1992, the Department of Transportation, Bureau of Licensing (Department), informed Appellee that her operating privileges would be suspended for one year pursuant to 75 Pa.C.S. § 1547(b)(1). The suspension was a result of her refusal to submit to chemical testing on September 3, 1992.

Appellee appealed to the Butler County Common Pleas Court and a de novo hearing was held on April 6, 1993. The Department presented the testimony of Officers Kriebel and Palla. Appellee presented no evidence but argued that her conduct in refusing to sign the consent form did not constitute a refusal of the chemical test because she verbally told the arresting officer that she would take the test. The court

dismissed Appellee's appeal, concluding that her actions were so inconsistent with her purported verbal assent that they constituted a de facto refusal of the test.

The Commonwealth Court reversed. It held that it was irrelevant that Appellee refused to sign the police consent form but later signed the hospital form since 75 Pa.C.S. § 1547 does not require a licensee to sign a consent form in addition to consenting to the test. Judge Newman filed a dissenting opinion, concluding that Appellee's refusal to undergo a blood test was not based on the officer's requirement that she sign the consent form, but rather was predicated on a refusal to complete the blood test generally.

We granted allocatur to clarify whether a licensee's refusal to sign a police consent form establishes a refusal to submit to chemical testing pursuant to 75 Pa.C.S. § 1547(b)(1).[2] That section provides as follows:

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa.C.S. § 1547(b)(1).

The plain language of the statute does not expressly require *written* consent to submit to chemical testing. In certain circumstances, however, the Commonwealth Court has held that the licensee's refusal to sign a form is equivalent to the

2. Our standard of review in a license suspension case is to determine whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *DOT, Bureau of Driver Licensing v. Ingram,* 538 Pa. 236, 252, 648 A.2d 285, 292–293 (1994). The issue of whether a motorist's conduct, as found by the common pleas court, constitutes an unqualified, unequivocal assent, is a question of law properly reviewable by an appellate court. *DOT, Bureau of Driver Licensing v. Bender,* 107 Pa.Commw. 475, 529 A.2d 44 (1987).

refusal to take the chemical test. Some cases focus on the type of form the licensee is requested to sign while other cases look to whether the request to sign was an impermissible precondition to the taking of the test. We shall examine the various cases to determine which method should be adopted by our Court.

The seminal case in this area is *Maffei v. Department of Transportation*, 53 Pa.Commw. 182, 416 A.2d 1167 (1980). In *Maffei*, the licensee consented to a blood test but refused to sign a hospital waiver of liability form. The Department determined that the licensee had refused the blood test and suspended his license. The trial court sustained the suspension.

The Commonwealth Court reversed and held that nothing in the Vehicle Code required a driver, as part of his consent to a blood test, to execute a document limiting or waiving the tester's liability. *Id.* at 184–185, 416 A.2d at 1169. The court noted that the Vehicle Code specifically provides the hospital, physician and technician with immunity from civil liability for "withdrawing of blood and reporting of test results," 75 Pa. C.S. § 1547(j). *Id.* at 185, 416 A.2d at 1169. The court concluded that a license suspension is a sanction for refusal to submit to a chemical test, not refusal of a test linked with execution of a release. *Id.*

*Maffei* was followed in *Sickman v. Commonwealth*, 79 Pa.Commw. 173, 468 A.2d 909 (1983), where the licensee was informed by police that she was required to answer a questionnaire and to complete a performance test in addition to a breathalyzer test. The licensee was also informed that her failure to complete the entire procedure would result in the suspension of her license. After the licensee refused to complete the procedure, the department suspended her license for one year. The trial court sustained the suspension.

The Commonwealth Court reversed. It held that the refusal to submit to a procedure which contains requirements in addition to that of the actual breathalyzer test is not a refusal

to take such a test for purposes of Section 1547(b). *Id.* at 175, 468 A.2d at 910.[3]

A similar issue arose in *Wheatley v. Department of Transportation*, 104 Pa.Commw. 171, 521 A.2d 507 (1987), where the licensee's operating privileges were suspended for failure to submit to a breathalyzer test after he refused to sign the police officer's implied consent form. The licensee appealed, relying on *Maffei* and *Sickman*. The Commonwealth Court held that "a refusal to sign an 'implied consent form' is not a refusal to submit to a breathalyzer test for purposes of Section 1547(b) of the Code." *Id.* at 175, 521 A.2d at 509.

An exception was then carved into the *Maffei, Sickman* and *Wheatley* line of cases by *Selan v. Department of Transportation, Bureau of Traffic Safety*, 108 Pa.Commw. 36, 529 A.2d 65 (1987) and *Lewis v. Commonwealth*, 114 Pa.Commw. 326, 538 A.2d 655 (1988). In *Selan*, the licensee was asked to sign a hospital form which stated that he consented to a test to determine his blood alcohol content pursuant to the provisions of the Vehicle Code. The licensee refused and his actions were deemed a refusal to submit to the test.

The Commonwealth Court affirmed the suspension of operating privileges, noting that the form was not a release of hospital liability but was simply a consent form for the performance of the test. Thus, the court found that the refusal to sign the consent form was a refusal to submit to the test.

Under almost identical facts, the Commonwealth Court in *Lewis* reached the same conclusion. The courts in *Selan* and *Lewis* did not refer to *Wheatley* and did not distinguish a police implied consent form from a hospital consent form.

**3.** The Commonwealth Court distinguished *Maffei* in *Department of Transportation v. Varos*, 102 Pa.Commw. 379, 518 A.2d 343 (1986), and *In Re Appeal of Stephen Kilcullen*, 103 Pa.Commw. 521, 520 A.2d 947 (1987). In the former case, the court held that *Maffei* and *Sickman* were not controlling since the licensee's submission to the blood test was not conditioned either upon the signing of a consent form or the completion of a questionnaire. Rather, the licensee was asked directly to submit to the test and unconditionally refused. In the latter case, the licensee was indecisive as to whether he would agree to the test and his actions were deemed a refusal.

The next case pertinent to our analysis is *Conrad v. Department of Transportation*, 142 Pa.Commw. 642, 598 A.2d 336 (1991). *Conrad* also involved the issue of whether a licensee was required to sign a hospital consent form as part of the blood alcohol test procedure pursuant to § 1547(b).

The *Conrad* court found that the critical issue in refusal cases involving pre-test procedures is whether the procedure requested is impermissibly linked to testing. *Id.* at 655, 598 A.2d at 343. The court held that nothing in the Code requires a driver, as part of his consent to a blood test, to execute a document memorializing his consent. *Id.* at 646, 598 A.2d at 338–339. It further held that the Code has rendered hospital consent forms in this context both redundant and unnecessary since the Code relieves hospitals of liability, § 1547(j), and imposes implied consent upon the licensee, § 1547(a). It concluded that because § 1547 literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, a suspension under § 1547 may not be supported by a licensee's refusal to satisfy any condition not explicitly required by § 1547. *Id.*

The *Conrad* decision was overruled in *Smith v. Commonwealth*, 655 A.2d 232 (Pa.Cmwlth.1995).[4] In *Smith*, the licensee orally consented to the taking of a blood sample but refused to sign a hospital form which authorized the hospital

4. After the decision in *Conrad*, but prior to *Smith*, the Commonwealth Court decided *Department of Transportation v. Miller*, 155 Pa.Commw. 564, 625 A.2d 755 (1993). In *Miller*, the licensee was requested to sign a consent form that also contained provisions for waiver of liability. The licensee objected to the liability provisions and the hospital clerk crossed them off the form. The licensee then stated that he would sign the form only if the hospital agreed to accept liability should he contract AIDS or hepatitis and if the director of the hospital initialled the form. The hospital did not comply and the licensee refused the test.

 The Commonwealth Court affirmed the trial court's conclusion that the licensee's refusal to sign the form constituted a refusal to submit to the test. Citing *Selan* and *Lewis* as controlling, the Commonwealth Court stated that once the admissions clerk eliminated the liability provisions, the licensee was faced solely with a consent form which is not the type of improper additional requirement linked to testing found objectionable in *Maffei*. The court did not refer to its earlier decision in *Conrad*.

to perform the test. The Department deemed her behavior a refusal and suspended her license. The trial court and the Commonwealth Court affirmed.

The en banc panel of the Commonwealth Court followed *Selan* and *Lewis* and distinguished *Maffei* since the case did not involve a waiver of liability form. It held that a request for a licensee to sign a hospital consent form is not the kind of improper or impermissible precondition to chemical testing which excuses the licensee's refusal to submit to a blood test. The court found that "to hold that a motorist can avoid license suspension simply by refusing to authorize in writing what the licensee has already orally consented to would frustrate the overall purpose of the law to protect the public from impaired motorists." *Smith,* 655 A.2d at 232. In so holding, the *Smith* court expressly overruled *Conrad* and the instant case.[5] Judge Friedman filed a dissenting opinion in *Smith,* in which Judge Pellegrini and Judge Kelley joined.

To bring order to the chaotic state of the law on the subject, we shall divide the various Commonwealth Court cases into two categories: (1) the *Wheatley/Conrad/Renwick* line of cases, which essentially hold that because the Vehicle Code does not require written consent to submit to chemical testing, the refusal to sign a form does not establish a refusal to take the test; and, (2) the *Selan/Lewis/Miller/Smith* line of cases, which hold that the signing of a consent form, whether it be a police implied consent form or a hospital consent form, is not an impermissible condition to chemical testing that excuses the licensee's refusal to submit to the test.[6]

We adopt the approach taken by the panels in *Conrad* and *Wheatley.* Requiring a licensee to sign a form, of whatever nature, in order to consent to chemical testing, is beyond the

5. The Commonwealth Court in the instant case relied on *Conrad* and *Wheatley.*

6. *Maffei* and *Sickman* are not placed into either category as their specific holdings can be construed as being limited to factual circumstances involving a waiver of liability form or an extensive questionnaire. The rationale supporting the decisions, however, is more closely followed by the panels in *Conrad, Wheatley* and the instant case.

parameters of § 1547 which does not require a licensee to complete any pre-test procedure. We find persuasive the reasoning in *Conrad* that the Code not only grants civil immunity to hospitals, physicians and technicians regarding the withdrawal of blood, § 1547(j), but also provides that the licensee's consent to the test is implied, § 1547(a). Thus, the written consent form is not vital to the chemical testing procedure.[7]

 This, however, does not end our analysis. We continue to adhere to the established law providing that anything less than an unqualified, unequivocal assent constitutes a refusal under § 1547. *Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa.Commw. 108, 111, 468 A.2d 891, 892 (1983). Although Appellee's refusal to sign the consent form does not, in and of itself, constitute refusal to take the chemical test, the facts dictate that Appellee's overall conduct demonstrated a refusal.

Appellee was requested to submit to the chemical testing several times by two separate officers. Appellee responded by closing her eyes, turning her head and ignoring the requests. In a fleeting moment, Appellee then stated that she would assent to the test. Such gamesmanship is not to be countenanced by the jurisprudence of this Commonwealth and does not promote the interests underlying the Implied Consent Law.[8] The trial court noted this distinction.

**7.** The Department admits that "[a]ll that a consent form does is to require the licensee to state in writing what the licensee has already stated verbally, i.e., the consent to the chemical test." Appellee's Brief at 19–20.

**8.** Somewhat similar circumstances arose in *Department of Transportation, Bureau of Licensing v. Balanow,* 126 Pa.Commw. 76, 558 A.2d 614 (1989) and *Pearson v. Commonwealth of Pennsylvania,* 122 Pa.Commw. 91, 551 A.2d 394 (1988). In the former case, the Commonwealth Court held that where a licensee refuses to submit to a blood test and separately refuses to sign a hospital waiver of liability form, the licensee has refused the blood test within the meaning of the Implied Consent Law. The latter case held that where a licensee has shown that he is unwilling in general to submit to a blood test, the subsequent presentation of a waiver of liability form to the licensee would vitiate the refusal of the blood test.

... [U]nder the circumstances of this case, there was no issue as to whether [Appellee's] response related to the chemical test or the implied consent form that she was requested to sign. The record reveals that when [Appellee] was requested to sign the implied consent form on at least two occasions, she turned her head away from the officer and refused to respond to him. Because [Appellee's] actions were so completely inconsistent with her purported verbal assent to the chemical test, the Court concluded that such actions constituted a de facto refusal of the test.

Trial Court Opinion at 3.

In conclusion, although we agree with the Commonwealth Court that a refusal to sign a consent form does not constitute a refusal to submit to testing, we find that Appellee's overall conduct demonstrated a refusal. The decision of the Commonwealth Court is therefore reversed and the order of the trial court is reinstated.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.