**Jerry FEATHERS, Appellant,**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted April 17, 1996.

Decided Sept. 26, 1996.

Robert T. Yurchak, for Appellant.

David R. White, Assistant Counsel, and Timothy P. Wile, Assistant Counsel In-Charge, for Appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

KELLEY, Judge.

Jerry Feathers (licensee) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court) which upheld the one-year suspension of his driving privileges imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) for refusal to submit to chemical testing pursuant to section 1547 of the Vehicle Code.[1] We reverse.

Licensee was involved in an automobile accident to which Police Officer Henry Woods responded. Licensee was placed under arrest for driving his vehicle while under the influence of alcohol, advised of the implied consent law and agreed to submit to a blood test to determine his blood alcohol content. Licensee was taken to a hospital where two vials of blood were drawn.

En route from the hospital to the police station, Officer Woods observed another accident that had recently occurred and called for assistance. Officer Woods and the arriving officer switched patrol cars, placing licensee and the blood samples in the new car which did not have a "cage" separating the front and back seats. It is alleged that while left unguarded for a short period, licensee removed the lid of the small box containing

---

**1.** 75 Pa.C.S. § 1547. Section 1547(b) of the Vehicle Code provides for the suspension of a driver's license for a period of one year upon the refusal to submit to chemical testing to determine blood-alcohol content.

the vials of blood and pulled the top off one of the vials. In doing so, this caused blood to flow from the vial into the containing bag. The blood then leaked from the bag into the box and ultimately leaked from the box.

Upon arriving at the police station, Officer Woods noticed that tampering had occurred with the vials. Licensee denied any involvement, although he had blood on his hand and handcuffs.[2]

Without submitting the remaining vial to the lab for analysis, Officer Woods reported this incident as a refusal to submit to chemical testing. Accordingly, DOT notified licensee that his operating privileges were scheduled to be suspended pursuant to section 1547(b)(1). Licensee appealed to the trial court which held a *de novo* hearing. Relying on this court's decision in *Fitzgerald v. Commonwealth*, 137 Pa.Cmwlth. 359, 586 A.2d 483 (1991), *petition for allowance of appeal denied*, 528 Pa. 614, 596 A.2d 160 (1991), as controlling, the trial court concluded that licensee's actions constituted a refusal and upheld the suspension. Licensee appeals from the trial court's order.

Initially, we note that our scope of review when reviewing a driver's license suspension case is limited to determining whether the trial court's findings are supported by competent evidence of record, whether an error of law has been committed, or whether the trial court abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994).

■ On appeal, the sole issue for our consideration is whether the destruction of one of two vials of licensee's blood constitutes a refusal to submit to chemical testing under section 1547 of the Vehicle Code.

■ It is well settled that in order to establish a prima facie case for a license suspension under section 1547(b) of the Vehicle Code, DOT must prove that the licensee (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) was specifically warned that a refusal would result in a license suspension; and (4) refused to do so. *Ingram; Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). A refusal to submit to a chemical test need not be expressed in words, but can be implied from a driver's actions. *Department of Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa. Cmwlth. 108, 468 A.2d 891 (1983).

In this case, by stipulation of the parties, there is no dispute that DOT met the first three requirements set forth above.

■ In support of his appeal, licensee contends that while he tampered with one vial of blood, he did not tamper with the other vial which was available for testing.[3] In addition, licensee argues that our decision in *Fitzgerald* is inapplicable since it involves a destruction of one available sample before testing and is distinguishable in that, in the case at bar, a second sample still existed which had not been opened.

In response, DOT argues that two vials of blood constituted one sample for testing purposes, rendering destruction of only one of the vials of blood a refusal under *Fitzgerald*. DOT contends that this position is strengthened by the fact that generally two vials of blood are required to allow the blood to be

---

**2.** At the trial court hearing, counsel for licensee admitted that licensee was responsible for tampering with the vial of blood. (Transcript of hearing, p. 6.)

**3.** DOT argues that licensee has waived the testing "theory" because he never argued before the trial court the theory that the police were required to test the remaining blood sample before declaring a refusal. We disagree. A review of the transcript herein reveals that respective

counsel for licensee and DOT stipulated that the only issue before the trial court was whether there was a refusal based upon the facts and the application of the law to those facts. The agreed-upon facts in this matter included the fact that one vial of blood was left intact. Obviously, licensee now disagrees with the trial court's application of the law, specifically *Fitzgerald*, to the facts. Accordingly, the testing "theory" has not been waived.

analyzed for blood alcohol purposes. This is supported, DOT argues, by the fact that the standard blood alcohol kits require two vials of blood for testing purposes.[4]

We considered a licensee's destruction of his own bodily evidence in *Fitzgerald.* The motorist in *Fitzgerald* was arrested for driving under the influence of alcohol and was taken to a hospital where he refused to sign a consent form for a blood test, but instead provided a urine sample. At the police station, the motorist destroyed the urine sample before it could be sent to the county laboratory for a blood-alcohol analysis. The motorist's operating privileges were suspended for one year for refusing to submit to chemical testing. The motorist appealed and the trial court affirmed.

On appeal to this court, the motorist argued that there was no evidence that he knew his urine sample had yet to be tested when he destroyed it. In affirming the trial court, we held "that the willful destruction of the sample where the testing has not been done *even where the motorist is not aware of that fact* is substantially less than an unqualified, unequivocal assent" to chemical testing. *Fitzgerald,* 586 A.2d at 484 (emphasis in original). Accordingly, we concluded that the motorist's conduct in *Fitzgerald* constituted a refusal to submit to chemical testing.

A review of the Vehicle Code and accompanying regulations reveals no requirement that two vials of blood are required to allow the blood to be analyzed for blood alcohol purposes. Further, there is no requirement in the Vehicle Code that if more than one vial is taken that the total of the vials together constitute one sample. The fact that the blood alcohol test kit contains two vials is of no consequence where the Vehicle Code imposes no such requirement. Therefore, we agree with licensee that there still remained one vial of blood available for testing and that the police officer should have attempted to have that vial tested before recording a refusal by licensee to submit to chemical testing.

Since we have determined that one vial of blood remained for testing, we believe that *Fitzgerald* is clearly not controlling in the present case. In *Fitzgerald* there was only one urine sample which was totally destroyed. In the present case, there remained, intact, a vial of blood available for testing.[5]

Accordingly, the order of the trial court is reversed.

### ORDER

NOW, this 26th day of September, 1996, the order of the Court of Common Law Pleas of Schuykill County, dated March 25, 1994, at No. S-1508-1993, is hereby reversed.

DOYLE, Judge, dissenting.

I dissent from the conclusion of the majority to reverse the trial court's judgment in this appeal, and specifically dissent from the majority's misconstruction of the issue, error in shifting the burden of proof, recasting of the facts, and reaching a decision on the basis of an issue which was never raised before the trial court, and therefore, waived by the appellant, Jerry Feathers.

The following recital of the facts is taken from the opinion of the trial judge, Judge

---

4. DOT cites *Colgan v. Department of Transportation, Bureau of Driver Licensing,* 127 Pa.Cmwlth. 479, 561 A.2d 1341 (1989) to support its assertion that two vials of blood are required to allow the blood to be analyzed for blood alcohol purposes. However, the citation of *Colgan* for this proposition is misleading. While *Colgan* does recite the trial court's finding that defendant was told two vials were required, *Colgan* certainly does not stand for the proposition that two vials are required or that two vials constitute one sample.

5. This court recognizes the criminal implications of tampering with evidence. However, it is undisputed that a one-year suspension for refusing to submit to chemical testing is a civil penalty; therefore, whether the chemical test results of the remaining vial of blood could be used as evidence in any criminal proceeding is beyond this court's jurisdiction.

Wilbur H. Rubright, which summarizes the stipulation of facts agreed upon at the de novo hearing. At that hearing the appellant, Jerry Feathers (Licensee), declined to testify and offered no evidence at all:

Patrolmen, Henry D. Woods, detailed the offense which led to the Plaintiff's arrest for driving under the influence and submitted an offense report. The parties agree to the details of the offense as well as Plaintiff being advised of the implied consent law and furthermore agreeing to take a blood test to determine his blood alcohol content. The Plaintiff did in fact have blood drawn and the events that took place after the blood being drawn will be the focus of our discussion.

After having blood drawn, the suspect and Patrolman Woods left the hospital on route to the Tamaqua Police Station. While on route Patrolman Woods discovered another accident that had just occurred. Patrolman Woods called for assistance and another patrolman arrived on the scene to discover that the driver in this accident was also a DUI suspect. The patrolman then switched vehicles. Mr. Feathers was then placed in the other unit along with the paperwork and blood sample taken earlier. It is alleged that Mr. Feathers was able to get to the blood sample due to the lack of a cage in the second unit. Plaintiff allegedly broke into a small box that the blood was in and pulled the top off of one of the tubes. In doing so, this caused blood to flow from the tube into the bag that it was contained in. The blood then leaked from the bag into the box and ultimately leaked from the box. This was discovered when Patrolman Woods returned to the police station with Mr. Feathers. Upon confronting Mr. Feathers, he denied that he was involved in this tampering but it was discovered that he had blood on his hand and on the cuffs that he was wearing. Also, after checking the

unit in which he was riding it was discovered that Mr. Feathers had attempted to wipe his hands clean on the rug on the floor. Mr. Feathers was the only person in the car while the evidence was in the vehicle.

**The particular issue that this Court is faced with then is whether the Plaintiff's destruction of his blood sample constituted a refusal to submit to chemical testing which would warrant a one year suspension of his operator's license.**

(Trial Court Opinion at 1–2.) (Emphasis added.)

The parties not only stipulated to the pertinent facts as recited by Judge Rubright, but specifically stipulated as to what the issue was:

Mr. Bach: [DOT counsel] Accordingly, the only issue would be whether there was a refusal based upon the facts and the application of the law to those facts.

Mr. Yurchak: [Counsel for Feathers] That's our understanding.

(Notes of Testimony (N.T.) at 3.)

As already stated, Feathers chose not to testify himself and offered no evidence, or argument, that the blood remaining in the one vial was adequate for a laboratory to complete the analysis for a blood-alcohol report. The majority, without expressly saying so, **assumes** that the blood left in the one vial **was** adequate, and then compounds the error by placing the burden of proving that the remaining blood sample **was not** adequate upon the Department. In my judgment, this is clear error.[1]

The majority states (op. p. 1362): "we agree with licensee that there still remained one vial of blood available for testing...." This statement misses the point; certainly some blood was left in the vial, but the essential question is, was it sufficient to en-

---

1. We observe that the record is absolutely devoid of any evidence establishing the quantity of blood which was in the remaining vial or even how large a vial it was. Moreover, I suspect that what blood was left in the second vial was proba-

bly contaminated by the presence of the blood from the first vial which Feathers spilled all over it. Counsel for DOT explained: "In fact, the vial remained . . . intact, however, covered with blood." (N.T. at 4–5.)

able a laboratory to perform a proper chemical analysis? Nowhere was it ever established that it was; the majority simply assumes that it was.

In addition to Licensee's failure to establish the underlying facts regarding the laboratory test, which I believe was his burden, the Licensee never argued this theory in the court of common pleas; Feathers has, therefore, waived it on appeal.[2] At the hearing Feathers even agreed that the issue of his refusal could be determined *on the facts as stipulated.* And, of course, there was no stipulation that the remaining blood sample was adequate for laboratory purposes. The majority, by first observing that there is an absence of any requirement in the Vehicle Code[3] or regulations that two vials of blood are necessary for a proper blood sample, subtly places the burden on the Department to prove that there is such a requirement.

The question of how much blood is necessary to enable a laboratory to perform a proper test, however, is not the issue. The real issue is: did Feathers by his tampering with the evidence and destruction of the blood sample give his unequivocal assent to the police under the Implied Consent Law? Feathers' refusal should not be judged on whether there was sufficient blood left to perform a laboratory analysis; it should be based solely on the Licensee's actions in deliberately destroying the evidence which was to be sent to the laboratory for the analysis. The fact that Feathers was not able to destroy all of the evidence (probably because he was handcuffed) is of absolutely no consequence or relevance.

Very recently our Supreme Court reiterated that "anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal under § 1547." *Department of Transportation v. Renwick,*

543 Pa. 122, 669 A.2d 934, 939 (1996). In *Renwick* the Court found that although the licensee's refusal to sign the consent form, by itself, did not equal a refusal, the licensee's other actions; *i.e.,* her failure to respond to requests for testing and shaking her head, demonstrated a failure to assent to the test. The Court held that "[s]uch gamesmanship is not to be countenanced by the jurisprudence of this Commonwealth and does not promote the interests underlying the Implied Consent Law." *Id.* at 132, 669 A.2d at 939. (Footnote omitted.)

Likewise, in the appeal now before us, Feathers' destruction of the evidence certainly doesn't promote the interests underlying the Implied Consent Law.

The majority would distinguish *Fitzgerald v. Commonwealth,* 137 Pa.Cmwlth. 359, 586 A.2d 483 , *petitioner for allowance of appeal denied,* 528 Pa. 614, 596 A.2d 160 (1991), on factual grounds alone. In *Fitzgerald,* the licensee provided a urine sample and, before the sample had been tested, he destroyed it. The licensee argued that he did not refuse to submit to the test because at the time he destroyed the sample he did not know that it had yet to be tested. This Court held that had the licensee known that the test had not yet been completed, the destruction of the sample would have certainly been a refusal, *and that even if the licensee had not known, it would still have been a refusal.* "[I]t is true that this record contained no evidence of the licensee's knowledge in this regard but we do not believe such evidence is necessary." *Fitzgerald,* 586 A.2d at 484. Contrary to the majority's narrow interpretation of *Fitzgerald,* the Fitzgerald Court did not hold that since there was only one urine sample and the licensee destroyed it, that a refusal occurred; to the contrary, what the Court held was that it was the Licensee's actions in the destruction of the sample that

---

2. *See Purdy v. Zoning Hearing Board of Easttown Township,* 161 Pa.Cmwlth. 386, 636 A.2d 1306, 1308 (1994) ("a legal theory not raised below is deemed waived on appeal"); *Kemp v. Qualls,* 326 Pa. Superior Ct. 319, 329, 473 A.2d 1369, 1374 (1984) ("It is well-established that a party may not successfully advance a new and different theory of relief for the first time on appeal, while failing to assert on appeal other grounds which were submitted for the same purpose in the lower court.")

3. 75 Pa.C.S. §§ 101–9821.

constituted an equivocal assent, thus a refusal.

The basic theory underlying *Fitzgerald* is controlling in the present appeal, and if anything, the actions of Feathers in this case are even more egregious than in *Fitzgerald* because Feathers knew at the time he tried to destroy the evidence that the blood samples had not yet been tested. His deliberate act of sabotage *is* the refusal because his conduct did not demonstrate an "unequivocal assent" as required under the Implied Consent Law. In my view, acts of sabotage to the test process are refusals. *Fitzgerald; Department of Transportation, Bureau of Driver Licensing v. Orlando,* 114 Pa.Cmwlth. 441, 538 A.2d 957 (1988) (licensee, by ingesting chewing tobacco before taking the breathalyzer test, refused to submit to chemical testing); *Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa.Cmwlth. 108, 468 A.2d 891 (1983) (a refusal was recorded where licensee, against specific instructions of an officer, smoked a cigarette before submitting to the breathalyzer test. The police officer said, "that's it" and shut the machine off; a subsequent test after that was unnecessary because the refusal had already occurred.)

Accordingly, I would affirm the trial court.

COLINS, President Judge, and SMITH, J., join in this dissent.