COMMONWEALTH of Pennsylvania

v.

Richard Dustin MERCER, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 1997.

Decided Aug. 21, 1997.

David J. DeFazio, Pittsburgh, for appellant.

Timothy P. Wile, Assistant Counsel In–Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

Richard Dustin Mercer (Licensee) appeals an order of the Court of Common Pleas of Allegheny County (Common Pleas), which affirmed a one-year suspension of Licensee's driver's license, imposed by the Department of Transportation (DOT), for refusing to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547.[1]

On September 19, 1995, Officer Jeff A. Filardi of the Charleroi Borough Police De-

1. Section 1547 of the Vehicle Code provides in pertinent part:

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

partment observed Licensee's vehicle traveling the wrong way on a one-way street. Officer Filardi stopped Licensee's vehicle and detected an odor of alcohol on Licensee's person. Licensee submitted to field sobriety tests, which he failed. Officer Filardi then requested Licensee to submit to a chemical test of his blood. Licensee agreed to the blood test, and Officer Filardi transported him to Mon Valley Hospital.

At the hospital, Officer Filardi asked Licensee if he was willing to submit to the blood test and informed Licensee that his operating privilege would be suspended for one year if he refused to submit to the test. Further, Officer Filardi presented Licensee with a hospital consent form, which contained a waiver of liability provision. The hospital would not draw Licensee's blood unless he signed the form. Licensee stated that he did not understand the form and refused to sign it without first consulting with his lawyer. Officer Filardi explained to Licensee that Licensee had no right to speak to an attorney before submitting to the blood test. Licensee, nevertheless, did not submit to the test and Officer Filardi notified DOT that Licensee refused chemical testing.

By notice mailed on December 8, 1995, DOT suspended Licensee's driver's license for one year for refusing to submit to chemical testing. Licensee appealed the suspension to Common Pleas.

At the hearing, Officer Filardi testified to the above described facts. Licensee also testified, explaining that he did not understand the hospital form and that he was willing to take the blood test. Common Pleas accepted Officer Filardi's testimony as credible and dismissed Licensee's appeal, reasoning as follows:

It is clear that [Officer Filardi] made a proper traffic stop and arrest and that he

duly informed [Licensee] of the implied consent law prior to requesting his submission. We found no reasonable basis to support [Licensee's] claim that he was confused by the information provided to him regarding his rights and the testing procedure.

(Common Pleas opinion at 1–2.) This appeal by Licensee followed.

On appeal, Licensee contends that Common Pleas erred in dismissing his appeal, because a motorist's refusal to sign a consent form does not constitute a refusal to submit to chemical testing. *Department of Transportation v. Renwick,* 543 Pa. 122, 669 A.2d 934 (1996).

In *Renwick,* a police officer requested a motorist to submit a blood sample for chemical testing and presented the motorist with a consent form which advised her, among other things, that she was under arrest for driving under the influence of alcohol and requested the motorist to agree to the blood test. The motorist, however, sat mute, turned her head, and ignored the request for a blood sample. The motorist continued, in the face of an additional request, to be unresponsive. After the police officer informed the motorist that silence constituted a refusal of the test subjecting her to a suspension, the motorist told the police officer that she would submit to the test. But, when the officer presented her with the consent form, she refused to sign it. The police officer told the motorist that, if she did not sign the document, he would deem it a refusal of the test. DOT suspended her driver's license for refusing chemical testing. She appealed to a common pleas court, which dismissed her appeal. We reversed, holding that Section 1547 of the Vehicle Code does not require a licensee to sign a consent form in addition to consenting to the chemical test. The Supreme Court

(1) while under the influence of alcohol....
**(b) Suspension for Refusal.—**
   (1) If any person ... is requested to submit to chemical testing and refuses to do so .... the department shall suspend the operating privilege of the person for a period of 12 months.

   (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.
75 Pa.C.S. § 1547(a)–(b).

granted allocatur to consider whether a licensee's refusal to sign a consent form establishes a refusal to submit to chemical testing.

The Supreme Court concluded that:

Requiring a licensee to sign a form, of whatever nature, in order to consent to chemical testing, is beyond the parameters of § 1547 [of the Vehicle Code] which does not require a licensee to complete any pretest procedure. We find ... persuasive the reasoning that the [Vehicle] Code, not only grants civil immunity to hospitals, physicians, and technicians regarding the withdrawal of blood, § 1547(j),[2] but also provides that the licensee's consent is implied, § 1547(a). Thus, the written consent form is not vital to the chemical testing procedure.

*Renwick,* 543 Pa. at 130–31, 669 A.2d at 939 (footnote omitted). The Supreme Court, nevertheless, explained that, even if a licensee is improperly presented with a consent form, the licensee is nonetheless required, unequivocally and without qualification, to assent to chemical testing.

Applying the above principles to the facts, the *Renwick* Court determined that Renwick was not required to sign the consent form and that her failure to sign the form did, in and of itself, not establish a refusal. However, because her behavior in ignoring the police officer's repeated requests to submit to test demonstrated a refusal of the test, the court reinstated her suspension.[3]

In the present case, Licensee argues that he consented to the blood test, but that Officer Filardi insisted that he sign the consent form and marked a refusal when Licensee refused to comply. Hence, in Licensee's

opinion, *Renwick* mandates that Common Pleas order be reversed. On the other hand, DOT asserts that Licensee did not unequivocally assent to the blood test, in view of his continuing demands to speak to a lawyer even after he was told that he had no right to counsel.

■ Officer Filardi's testimony shows that Licensee agreed to submit to chemical testing before he was transported to the hospital. However, after Licensee arrived at the hospital, he was presented with a hospital consent form. Officer Filardi testified that he read the form to Licensee and testified that he told Licensee that he had to sign the form and waive his rights against the hospital.[4] Officer Filardi testified as follows:

Q. Did you give Mr. Mercer the opportunity, at any time when you were at the hospital, to take the blood test without signing any forms?

A. The hospital will not draw blood unless he signed the form.

. . . .

Q. I will ask a statement of fact: Officer, you presented—you read the form to Mr. Mercer, did you not?

A. Yes, I did.

Q. In that form, did you ever tell Mr. Mercer that he had to waive liability in any way toward the hospital?

A. Yes.

Q. And did he, with respect to that, request any other way—

A. His only response was that he wanted his attorney present.

(Notes of Testimony at 13–14.)

In our view, it is clear that, as a precondition to submitting to the blood test, Licensee

---

2. Section 1547(j) of the Vehicle Code provides:

(j) **Immunity from civil liability and reports.—**
No physician, nurse or technician or hospital employing such physician, nurse or technician ... shall be civilly liable for withdrawing blood or obtaining a urine sample and reporting test results to the police....

3. "[Renwick] was requested to submit to the chemical testing several times by two separate officers. [She] responded by closing her eyes,

turning her head and ignoring the requests.... Such gamesmanship is not to be countenanced by the jurisprudence of this Commonwealth...." *Renwick,* 543 Pa. at 131, 669 A.2d at 939.

4. The officer's advice, of course, was inaccurate because the Vehicle Code specifically grants immunity to hospitals, physicians and technicians regarding the withdrawal of blood. 75 Pa.C.S. § 1547(j).

was required to sign the hospital consent form and release the hospital from civil liability resulting from the test. Hence, we must conclude that Officer Filardi's demand that Licensee sign the form was impermissible under *Renwick.*

DOT argues that Licensee's behavior nevertheless resulted in a refusal under the law because he continued to request a lawyer even after Officer Filardi told him he was not entitled to counsel. We disagree.

When a motorist is confused over the applicability of his or her *Miranda*[5] rights to chemical testing and the police respond by presenting the motorist with an accurate statement of his rights as applied to the test, continued demands to speak to a lawyer constitute a refusal. *Department of Transportation v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996). In this case, however, the record reveals that the hospital consent form instigated a discussion between Officer Filardi and Licensee about the meaning of that document, which drew an inaccurate explanation from Officer Filardi, which ultimately resulted in Licensee's request for counsel and Officer Filardi's decision to mark Licensee as refusing the test. This is illustrated by the following testimony of Officer Filardi:

Q. ... [A]t the hospital ... some hospital personnel gave you this form to give to [Licensee]?

A. Yes. It was a ... consent form.

Q. Did anybody explain to [Licensee] the contents of the form.

A. Yes.

Q. Who was that?

A. Myself.

Q. Isn't it a fact, sir, that he did not understand what this form was all about; and he expressed to you his confusion regarding it?

A. ... I tried reading it to him, explaining it to him; but he just kept saying the he didn't understand; he didn't understand.

Q. ... And based on your repeated attempts to explain it and his inability to understand it at that point you became frustrated and you marked him as a refusal; is that correct?

A. Yes.

....

Q. ... Did [Licensee] indicate why he did not want to sign that form?

A. The only thing he stated, he wanted his attorney present.

....

Q. In that form, did you ever tell Mr. Mercer that he had to waive liability in any way toward the hospital?

A. Yes.

Q. And did he, with respect to that, request any other way—

A. His only response was that he wanted his attorney present.

Q. ... And despite your explanations, Mr. Mercer failed to supply his consent?

A. Yes.

(N.T. at 12–14.) (Emphasis added.)

In light of the above testimony, we must conclude that Licensee's demand to speak to a lawyer resulted from Officer Felardi's presentation of the hospital form, which contained a waiver of civil liability, and not from the request to submit to chemical testing. We cannot say as a matter of law that Licensee's response to Officer Filardi's explanation of the legal effect of the hospital's consent form amounted to "gamesmanship," or that Licensee's overall conduct demonstrated a refusal to submit to chemical testing.

Accordingly, Common Pleas' order is reversed.

### ORDER

**NOW,** August 21, 1997, the order of the Court of Common Pleas of Allegheny County

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

in the above-captioned matter is hereby reversed.