**Raphael Victor MASHUDA, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 29, 1997.

Decided Oct. 9, 1997.

Richard E. Goldinger, Butler, for appellant.

Barbara A. Darkes, Assistant Counsel, and Timothy P. Wile, Assistant Counsel In–Charge, Harrisburg, for appellee.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

Raphael Victor Mashuda (Mashuda) appeals from an order of the Court of Common Pleas of Butler County (trial court) that dismissed his appeal from a one-year suspension of his operating privilege pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1]

By official notice dated September 14, 1994, the Department of Transportation (DOT) informed Mashuda that his operating privilege was to be suspended for one year as a result of his refusal to submit to chemical testing on August 21, 1994. Mashuda appealed his suspension to the trial court pursuant to Section 1550(a) of the Code, 75 Pa.C.S. § 1550(a).

At a *de novo* hearing, Mashuda did not testify. Butler Township Police Officer Matthew Pearson (Officer Pearson) testified that he responded to a one-vehicle accident on Route 422 at approximately 8:57 P.M. Officer Pearson arrived at the scene and found Mashuda, the operator of a 1994 Harley Davidson motorcycle, and an unidentified passenger. Officer Pearson stated that "when I approached Raphael Mashuda, I had asked which way he was driving at the time of the accident ... [and][h]e had stated west then quickly said east...." Notes of Testimony, January 6, 1997, (N.T.) at 6; Reproduced Record (R.R.) at 6. Officer Pearson noticed that Mashuda's breath smelled of alcohol and that "when I would ask him a question and he would reply, he would kind of cover his mouth and look away from me ... [h]e wouldn't make eye contact with me." N.T. at 7; R.R. at 7. Mashuda was arrested and transported for the administration of a breathalyzer test.

At the police station, Officer Pearson requested Mashuda to submit to a breathalyzer test and explained that pursuant to the implied consent law his license would be suspended for one year if he refused. Mashuda agreed to submit to the test. Mashuda did not supply an adequate amount of breath on his first and second attempt on the breathalyzer machine. Mashuda then informed Officer Pearson that "he was in some pain and that he couldn't do the test." N.T. at 11; R.R. at 11. Mashuda was transported to a local hospital.

At the hospital, Officer Pearson requested Mashuda to submit to a blood test and was again explained the implied consent law. Officer Pearson stated Mashuda "would try to stall" and that Mashuda said he "didn't have to sign it [the refusal form for blood] right now, that he had to think about it." N.T. at 12; R.R. at 12. After ten minutes, Officer Pearson stated that "this is your last opportunity [and] if you do not sign, you'll be marked a refusal." N.T. at 13; R.R. at 13. Mashuda refused to submit to the blood test and his refusal was noted.

The trial court dismissed Mashuda's appeal, concluding:

> In this present situation, in addition to Defendant's refusal to sign the form, Defendant's conduct exhibited a refusal of the consent that was previously given. Defendant had an initial breathalyzer test administered which he was unable to complete. The Officer repeated the implied consent warnings and requested a blood test. Defendant orally agreed to the blood test, but once the form was presented to him he hesitated and stalled. Defendant then refused to take the test when he was told it would be his last opportunity before it constituted a refusal. Defendant did not express any confusion or factors that would indicate that the subsequent decision was only with regards to the consent form, and not a refusal of the test itself.

---

1. Section 1547 of the Code provides:
   **(b) Suspension for refusal.—**
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

This lack of unqualified and unequivocal assent to the test is sufficient to warrant the suspension of Defendant's driver's license. Any contrary finding would frustrate the purpose of the law.

Opinion of the Trial Court, January 23, 1997, at 4–5.

On appeal Mashuda contends that a refusal to sign an implied consent form is not tantamount to a refusal to submit to a blood test and that the trial court erred by determining that his overall actions constituted a refusal.[2]

■■■ Our scope of review in a driver's license suspension case is limited to determining whether the trial court abused its discretion or committed an error of law and whether the court's findings are supported by competent evidence. *Wheatley v. Department of Transportation*, 104 Pa.Cmwlth. 171, 521 A.2d 507 (1987). In cases involving the suspension of a driver's license for a refusal to submit to chemical testing, DOT must prove: 1) that the licensee was placed under arrest for driving under the influence; 2) that he was requested to submit to chemical testing; 3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and 4) that the licensee refused to submit to the test. *Department of Transportation, Bureau of Driver Licensing v. Pestock*, 136 Pa.Cmwlth. 694, 584 A.2d 1075 (1990), *appeal denied*, 528 Pa. 619, 596 A.2d 801 (1991).

Initially, Mashuda contends that his failure to sign the consent form cannot be considered a refusal to submit to chemical testing. Mashuda asserts that Officer Pearson had the duty to inform him that the blood results taken for medical purposes could be subpoenaed.

In *Department of Transportation v. Renwick*, 543 Pa. 122, 669 A.2d 934 (1996) Betty Renwick (Renwick) was involved in a two-vehicle accident when her vehicle struck the rear of a tractor-trailer. Officer Ray Kriebel (Officer Kriebel) arrived at the scene and noticed that Renwick suffered a facial cut to the chin and that she smelled of alcohol. Renwick admitted that she had been drinking prior to the accident and was transported to a local hospital for her injuries.

At the hospital, Officer Kriebel requested Renwick to submit to a blood test. Renwick did not respond and "Officer Kriebel informed Appellee [Renwick] that her silence would be considered a refusal...." *Id.* at 125, 669 A.2d at 936. Renwick agreed to submit to the test but when asked to sign the consent form Renwick "stated that she could not lift her arm to sign the form." *Id.* at 125, 669 A.2d at 936. Officer Kriebel again informed Renwick that if she did not sign the consent form it would be considered a refusal. Renwick did not sign the form and a refusal was recorded.

On appeal our Pennsylvania Supreme Court addressed the issue of whether a licensee's refusal to sign a consent form after agreeing to submit to a blood test constituted a refusal under Section 1547 of the Code. The Supreme Court stated:

We adopt the approach ... [that] [r]equiring a licensee to sign a form of whatever nature, in order to consent to chemical testing, is beyond the parameters of § 1547 which does not require a licensee to complete any pre-test procedure. We find persuasive the reasoning in *Conrad [v. Department of Transportation*, 142 Pa. Cmwlth. 642, 598 A.2d 336 (1991) ] that the Code not only grants civil immunity to hospitals, physicians and technicians regarding the withdrawal of blood, § 1547(j), but also provides that the licensee's consent to the test is implied, § 1547(a). Thus, the written consent form is not vital to the chemical testing procedure.

This, however, does not end our analysis. We continue to adhere to the established law providing that anything less than an unqualified, unequivocal assent constitutes a refusal under § 1547. Although Appellee's refusal to sign the consent form does not, in and of itself, constitute refusal to

---

2. This Court notes that DOT contends that Mashuda's failure to provide sufficient air samples constituted a refusal to submit to chemical testing. However, the DL—26 form states that Mashuda refused to submit to a chemical test of blood and the trial court conducted its review accordingly. Therefore, we shall restrict our appellate review to the issue of whether Mashuda refused to submit to a chemical test of blood.

take the chemical test, the facts dictate that Appellee's overall conduct demonstrated a refusal.

Appellee was requested to submit to the chemical testing several times by two separate officers. Appellee responded by closing her eyes, turning her head and ignoring the requests. In a fleeting moment, Appellee then stated that she would assent to the test. Such gamesmanship is not to be countenanced by the jurisprudence of this Commonwealth and does not promote the interests underlying the Implied Consent Law. (citation and footnotes omitted). *Id.* at 130–31, 669 A.2d at 939.

As in *Renwick* Mashuda's refusal to sign the consent form did not constitute a de facto refusal to submit to the blood test. Rather, Mashuda's overall actions demonstrated a refusal. Mashuda stated that he would submit to a blood test but stalled when he was presented with the consent form. After ten minutes, Officer Pearson gave Mashuda one more opportunity to take the test. In response, Mashuda stated that Officer Pearson was unable to prove that he was operating the motorcycle and refused to take the test. Anything short of an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal. *Renwick.*

Mashuda next contends that the trial court abused its discretion when it determined there was a refusal because Officer Pearson failed to inform him that if he refused to submit to a blood test any blood sample withdrawn by the hospital for medical purposes could be subpoenaed. Mashuda has failed to cite any legal authority to support the proposition that a police officer has such a duty.

Accordingly, we affirm the decision of the trial court.

### ORDER

AND NOW, this 9th day of October, 1997, the order of the Court of Common Pleas of Butler County at No. MSD 94–40350, dated January 23, 1997, is affirmed.