**Murray v. Pa. Dept. of Transportation**

*Edward N. Flail*, for appellant.
*Christopher Duerr*, for appellee.

TUNNELL, *J.*, February 14, 2014—After receiving notice that licensee Alan Wade Murray had refused to submit to a chemical test, DOT mailed him a notice dated March 18, 2013 advising him that his driving privilege was suspended for a period of one year effective April 22, 2013 pursuant to §1547(b)(1)(ii) of the Vehicle Code.

This section provides that when any person placed under arrest for driving under the influence (DUI) is requested to submit to a chemical test and refuses to do so, DOT shall suspend the person's operating privilege for a period, in this case, of one year. Murray filed a timely appeal to this court.

A *de novo* hearing was scheduled for the date of August 8, 2013. The court granted DOT's request for a continuance, however, and the matter was rescheduled and heard on October 10, 2013. At the conclusion of the hearing, the court denied the appeal and reinstated Murray's suspension. The licensee has filed a timely appeal on the basis of a "Concise Statement of errors", which the court now addresses.[1]

In the early morning hours of February 16, 2013, Officer Jeffrey Yankanich of the East Brandywine Township Police Department observed that a car operated by defendant Murray was crossing over the white sideline and left turn lanes. He pulled Murray over. The officer testified at the hearing that he smelled an odor of alcohol on Murray's breath, that Murray had glassy and bloodshot eyes and that Murray admitted he had had a couple of drinks. (N.T., p. 5). The officer administered certain field tests including a finger-to-nose and a walk and turn, which Murray failed. He administered a portable breath test to Murray which produced a blood alcohol level of .192. *Id.* He arrested the licensee for suspicion of driving under the influence and transported him to the Brandywine Hospital. A phlebotomist was summoned. The officer testified that

---

1. Hon. Mark L. Tunnell was assigned to this case after the appeal was filed.

he read form DL-26 verbatim to the licensee.

Form DL-26, which was admitted as part of DOT's exhibit C-1, includes the following statements:

"It is my duty as a police officer to inform you of the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the vehicle code.

2. I am requesting that you submit to a chemical test of (Blood) ____(blood, breath or urine. Officer chooses the chemical test).

3. If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the vehicle code, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the vehicle code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If

you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

Adjacent to the statement "I have been advised of the above," the licensee signed his name and dated it. Officer Yankanich requested that Murray submit to a blood sample, affirming that the licensee had no right to talk to an attorney. *Id.* The licensee responded that "he did not want to supply a blood sample." (N.T., p. 6).

The DL-26 form contains the implied consent warnings required by §1547 of the vehicle code, 75 Pa. C.S. §1547, pursuant to the Supreme Court's decision in *Dept. of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Officer Yankanich stated, and the licensee later agreed when he took the stand in his own case, that he was confused by the statement that he could not contact his attorney. (N.T., p. 13). Despite his requests to do so, the officer said "no." (N.T., p. 23). Murray testified that he did not understand the document and thought that he had to sign it. This was why he wanted to talk to his attorney; he said "I wasn't fully aware of my legal rights" at that time. (N.T., p. 21). He assumed that he had been arrested for the offense of DUI following the administration of the field tests and the portable breath test. He testified "I was confused on my rights because I thought I was already arrested." (N.T., p. 24). Officer Yankanich testified that "Murray was intoxicated at the time and was confused that he could not contact his attorney after I read it off the DL-26 form." (N.T., p. 13). On cross examination, the officer was asked several times

inasmuch as they were only thirty minutes into a two-hour window to draw the blood, "what would it have cost the Commonwealth to make a phone call?" (N.T., pp. 13-14).

The licensee raises several issues on appeal. His first assignment of error is that the court abused its discretion in granting a continuance on August 8, 2013 at the Commonwealth's request based on the Commonwealth's contention that it thought this was a proceeding on the *nunc pro tunc* portion of Murray's petition, not the hearing on the appeal itself. Murray complains that the posture of the case was quite clear.

The trial court is vested with broad discretion in the determination of whether a request for a continuance should be granted and the appellate courts do not disturb such a decision unless an abuse of that discretion is apparent. *Baysmore v. Brownstein*, 771 A.2d 54 (Pa. Super. 2001). In this respect, an abuse of discretion is more than just an error in judgment; on appeal, a trial court will not be found to have abused such discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias or ill will. *Baysmore, supra.* The granting of the continuance or the refusal to grant such continuance even when that constitutes a dismissal is exclusively within the discretion of the trial court. *Swoyer v. Comm. Dept. of Transp.*, 142 Pa. Cmwlth. 1, 599 A.2d 710 (1990), *app. den.*, 527 Pa. 659, 593 A.2d 428, (1991), *cert. den.*, 502 U.S. 921, 116 L.Ed.2d 273, 112 S.Ct. 332 (1991). In this case, the trial court balanced the relative equities between the parties and decided to grant the Commonwealth a continuance. This was neither manifestly unreasonable, nor the result

of any partiality.

Within the vehicle code, the implied consent law provides that every person who drives, operates or is in actual physical control of a motor vehicle is deemed to have given his or her consent to the withdrawal of a sample of breath, blood or urine at the request of the police officer if that person is arrested for driving under the influence (DUI), 75 Pa. C.S. §1547(a). While a driver has the statutory right to refuse to submit to testing, the exercise of that right comes with a price — a one-year suspension of his or her operator's privilege. It is provided that the officer must inform the driver that his operator's privileges will be suspended upon refusal to submit to chemical testing. Since drivers are often impaired, the standard is not a "knowing and intelligent" decision, but a "knowing and conscience" decision to refuse. It is not the duty of the police officer to explain the various sanctions available under the given law to an licensee so as to give the individual an opportunity to decide whether it is "worth it" to violate the law. It is sufficient for the police officer to inform a licensee that he or she will be in violation of the law and will be penalized for that violation if he or she should fail to accede to the officer's request for a chemical test.

Here the licensee asserts that the court erred in determining that DOT met its burden because he only sought to clarify his rights and duties and did not intend to stall the chemical testing, because there was plenty of time for him to make a brief call to his attorney which would not have affected his blood alcohol level in any way, and because if he had reached his attorney, the attorney

would have told him to submit to the test. The court was not unsympathetic to these assertions. It determined that Murray was confused and was not stalling. Even though the court entertained personal misgivings, it concluded that, as a common pleas court, it was bound to follow the law and enforce it.

The Commonwealth Court has recognized that licensees often fail to readily appreciate the difference between the civil suspension for failure to submit to testing, and the penalties imposed following conviction for DUI. Nevertheless, the Commonwealth Court has firmly held that the DL-26 form does not generate confusion, that it adequately and accurately informs a licensee that a request for counsel will be treated as a refusal for purposes of a license suspension, and contains sufficient information upon which a licensee can base a decision as to whether or not to submit to testing. *Garner v. Dept. of Transp., Bureau of Driver Licensing*, 879 A.2d 327 (Pa. Cmwlth. 2005). Furthermore, the appellate courts have long held that police officers are not required to see whether the licensee will ultimately change his mind. *See, e.g., Broadbelt v. Dept. of Transp., Bureau of Driver Licensing*, 903 A.2d 636 (Pa. Cmwlth. 2006). Time is of the essence not only due to the volatile nature of the evidence to be obtained, but also due to the public interest in ascertaining violations of 75 Pa. C.S. §3731 (DUI) which is so compelling as to justify a very strict application of the law. *Dept. of Transp., Bureau of Traffic Safety v. Wroblewski*, 65 Pa. Cmwlth. 333, 442 A.2d 407 (1982). In that case, the licensee insisted on waiting for his attorney before submitting to a test. This was deemed a refusal to take the test. Although the attorney arrived a few minutes later

and the licensee agreed to take the test, the officer replied that it was too late. The trial court sustained the licensee's appeal. Upon further appeal by DOT, the Commonwealth Court reversed and reinstated the suspension under the foregoing principles. *See also, Dept. of Transp., Bureau of Driver Licensing v. Tomczak*, 132 Pa. Cmwlth. 38, 571 A.2d 1104 (1990).

Appellate review is limited to determining whether the findings of fact are supported by competent evidence, or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Piasecki v. Dept. of Transp., Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa. Cmwlth. 2010). *Stancavage v. Dept. of Transp., Bureau of Driver Licensing*, 986 A.2d 895 (Pa. Cmwlth. 2009). However, it has been held that whether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law. *Hudson v. Dept. of Transp., Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa. Cmwlth. 2003). The courts have consistently held in addressing this issue that "anything substantially less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so. *Dept. of Transp. v. Renwick*, 543 Pa. 122, 131, 669 A.2d 934, 938 (1996), *McKenna v. Dept. of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013). As the above review of the evidence adduced at the hearing demonstrates, it is quite sufficient to support the determination that this was a refusal on Murray's part. Ultimately, Murray's lament is a familiar story, with nothing novel to it. Although he stated that he was not "fully aware" of his legal rights, he was told everything by the police officer required by law, and Murray signed his name in affirmation of that fact.

Murray also raises two constitutional challenges on appeal. First, he contends that the trial court erred in failing to find that his automatic placement into the highest level of intoxication "under Section 1547(2)(ii) through 75 Pa. C.S.A. § 3802(c)" because of his refusal to submit to chemical testing is a "violation of his rights under the Constitution of the United States of America and the Constitution of the Commonwealth of Pennsylvania." Second, Murray argues that the trial court erred in failing to find that the denial of his "right to contact counsel" prior to refusing chemical testing arises to a violation of the Constitutions of the United States and this Commonwealth. Although Murray does not identify which provisions of the respective constitutions or which of his constitutional rights were implicated by the events in question, his "brief in support of appeal" submitted to the trial court prior to the hearing suggests that (1) he views his placement into the highest level of intoxication as an "arbitrary standard" and (2) that he believes a constitutional right to "contact counsel" was denied by Pennsylvania's Implied Consent Law.

Pennsylvania courts have long held that when reviewing a constitutional challenge of a statute, the judiciary must accord a strong presumption of constitutionality to the acts of the legislature as a coequal branch of government. *Commonwealth v. Balog*, 672 A.2d 319 (Pa. Super. 1996). There exists a judicial presumption that branches of government take seriously their constitutional oaths. *See* 1 Pa.C.S. § 1922(3) ("In ascertaining the intention of the general assembly in the enactment of a statute the ... presumption [is] [t]hat the general assembly does not intend to violate the Constitution of the United States or of

this Commonwealth"); *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383, 393 (2005) In order to overcome this presumption, the person challenging the constitutionality of a statute has the heavy burden of demonstrating that the statute clearly, palpably and plainly violates the Constitution. *Id.* (citing *Commonwealth v. Stock*, 499 A.2d 308, 311-12 (Pa. Super. 1985)). As the Pennsylvania Superior Court has stated, "[t] his is no easy task. *Commonwealth v. Kitchen*, 814 A.2d 209, 212 (Pa. Super. 2002).

Murray's constitutional challenge to the placement of a person into the highest level of intoxication when they refuse a chemical test is based solely upon the recent United States Supreme Court decision in *Missouri v. McNeely*, 185 L.Ed.2d. 696, 133 S.Ct. 1552 (2013). His reliance on *McNeely*, however, is misplaced. In *McNeely*, the defendant was prosecuted for driving while intoxicated and during the proceedings moved to suppress results of a warrantless blood test. *Id.* After being stopped by a police officer for speeding and crossing the centerline, the defendant declined a breath test, was arrested and taken to the hospital for blood testing, which he also refused. The officer never attempted to secure a warrant and directed a lab technician to take a sample. *Id.* at 1557. In contrast, this statutory proceeding and appeal deal only with Murray's violation of Pennsylvania's Implied Consent Law, not the criminal matter of operating a vehicle while intoxicated or the warrant requirement for nonconsensual blood testing. *McNeely* is inapplicable to the facts of the present case.

Moreover, the Supreme Court's decision in *McNeely* acknowledged the validity of the implied consent laws.

The *McNeely* Court in its opinion acknowledged:

> States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the state, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.... Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most states allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution.

*McNeely*, 133 S.Ct. at 1566.

Additionally, the Superior Court in *Commonwealth v. McCoy*, denied a similar constitutional challenge when it held that the "High Rate of Alcohol" classification for penalty purposes where there was an accident resulting in boldly injury did not violate equal protection guarantees. 895 A.2d 18 (Pa. Super. 2006), *aff'd* 601 Pa. 540, 975 A.2d 588 (2009). In *McCoy*, the defendant argued that because under the statute two drivers with the same blood alcohol level could be treated differently depending on whether or not there was an accident and the same license suspension could be imposed where there was no blood alcohol result, whether a person refused to take a chemical test or if they were never asked equal protection rights are violated. *Id.* at 34. In analyzing the argument, the Superior Court first noted that the case "does not involve a

fundamental right or suspect class and does not involve an important right or sensitive classification." *Id.* Therefore, the inquiry "rests upon whether there is a rationale basis for the classification." *Id.* The Superior Court concluded:

> The legislature may have concluded that where there is no BAC result, it is more likely than not due to a person's refusal to submit to the test.... The legislature did not act unreasonably by failing to give a DUI offender the benefit of the doubt, instead ascribing the highest penalties in these instances, since the offender assumed the risk by driving while under the influence of drugs or alcohol.

*Id.*

Murray has failed to demonstrate, as required, that the Pennsylvania Implied Consent Law clearly, palpably and plainly violates any constitutional rights.

As for the second constitutional challenge, Murray acknowledges in his concise statement that "he could not be represented by an attorney." In order to overcome this obstacle, he attempts to create a distinction between the "right to counsel" and the "right to contact counsel" to clarify one's rights and duties. (Concise statement, at ¶4(a)). There is no difference. One's rights regarding counsel are clearly stated in the DL-26 and have been addressed by the Supreme Court of Pennsylvania.

On further appeal, in *Commonwealth of Pennsylvania v. McCoy*, 601 Pa. 540, 591 (2009), the Supreme Court of Pennsylvania held as follows:

Submission to a chemical test upon being stopped for

suspected DUI is an evidence-gathering circumstance, prior to the filing of any formal adversarial judicial proceedings, and as such does not constitute a critical stage for purposes of the right to counsel. There is no sixth amendment or article I, § 9 right to counsel prior to submission to a chemical test pursuant to a DUI stop.

The right to counsel as contemplated in *McCoy*, and the numerous other cases in this Commonwealth with similar holdings, is no different from the right to "contact" counsel.

Whether you call it the "right to counsel" or the "right to contact counsel" the idea is the same: a party is not entitled to consult with counsel to seek legal advice, or "clarification" as Murray calls it, prior to submission to a chemical test.

An appropriate order follows.

## ORDER

And now, this 14th day of February, 2014, the appeal filed in the above-referenced matter is denied and the suspension shall be reinstated.